IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS J. KINSTLE, | ) | CASE NO. 3:13CV998 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| JASON BUNTING, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Nicholas J. Kinstle, ("Petitioner" or "Kinstle") brings this habeas corpus action

pursuant to 28 U.S.C. § 2254.  Doc. 1.  Kinstle, an inmate at the Marion Correctional Institution,

is a self-described "Redemptionist"[1] who was convicted by an Allen County, Ohio, Court of

Common Pleas jury of twenty-three counts of intimidation under Oh. Rev. Code § 2921.03(A).[2]

Doc. 30-13, pp. 4-6.[3] *State v. Kinstle*, No. CR2011 0048 (Allen Cty. Common Pleas Ct. filed

July 15, 2011).  On July 19, 2011, the trial court sentenced Kinstle to an aggregate prison term of

eight years comprised of concurrent four year sentences on each of counts 1-12 followed

consecutively by concurrent four year sentences on each of counts 13-23.  Doc. 30-14, pp. 4-6.

---

[1]  *See* ¶ 16 of the state court of appeals' opinion, quoted below, describing Kinstle's trial testimony and that of the
State's expert witness who described the nature of the Redemptionist movement.

[2]  Oh. Rev. Code § 2921.03 is Ohio's intimidation statute.   Subsection (A) provides:

> No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt
> to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a
> civil action or proceeding in the discharge of the duties of the public servant, party official, attorney, or
> witness.

[3]  Doc. page citations are to ECF Doc. page numbers.

On May 2, 2013, Kinstle filed his Petition for writ of habeas corpus setting forth fourteen grounds for relief.  Doc. 1, pp. 14-53.[4]  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Kinstle's Petition is a mixed petition in that it includes both exhausted and unexhausted claims.  The undersigned finds that Kinstle is not entitled to a stay of this action while he exhausts his unexhausted claims in state court.  Thus, the undersigned recommends that Kinstle be permitted a reasonable time to file an amended petition deleting the unexhausted grounds and, if Kinstle fails to do so, his Petition for writ of habeas corpus (Doc. 1) should be dismissed without prejudice.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).  The Allen County Court of Appeals, Third Appellate District of Ohio, set forth the facts as follows:[5]

> {¶ 2} On February 17, 2011, the Allen County Grand Jury indicted Kinstle with 23 counts of intimidation in violation of R.C. 2921.03(A), a felony of the third degree. The counts alleged intimidation of the following victims: (1) Count I—Darin Rowe; (2) Count II—Jerry Maus; (3) Count III—Dean McCombs; (4) Count IV—Tom Binkley; (5) Count V—Kevin Kesner; (6) Count VI—Branden Provonsil; (7) Count VII—Margie Miller; (8) Count VIII—Jim Link; (9) Count IX—Clyde Breitigan; (10) Count X—Jeffrey Reed; (11) Count XI—Richard Warren; (12) Count XII—Rhonda Eddy; (13) Count XIII—Becky Saine; (14) Count XIV—Al Mefferd; (15) Count XV—Fred DePalma; (16) Count XVI—Jerry Morris; (17) Count XVII—Brock Douglass; (18) Count XVIII—Sam Crish; (19) Count IXX—Gary Hook; (20) Count XX—Tim Jackson; (21) Count XXI—Greg Sneary; (22) Count XXII—Sam Bassitt; and (23) Count XXIII—Dan Reiff.

---

[4] Kinstle's grounds for relief are set forth in section II. H. below.

[5] The facts are taken from the Third District Court of Appeals' decision *State v. Kinstle*, Case No. 1-11-45 (Ohio Ct. App. Dec. 17, 2012); 985 N.E.2d 184 (Ohio Ct. App. 2012). Kinstle has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

{¶ 3} The indictment arose out of Kinstle's production and transmission of various notarized documents to the above-named victims demanding that they abstain from performing certain actions against him or pay him a substantial amount of money. The documents have the veneer of being official legal filings due to their format and language, but none of them were ever filed with a court. At the time of the receipt of these documents, each victim was involved in legal proceedings against Kinstle as a judge, witness, or governmental official.

{¶ 4} On May 25, 2011, Kinstle moved to dismiss the indictment on the basis that R.C. 2921.03 is unconstitutional. The trial court denied the motion on June 8, 2011.

{¶ 5} The jury trial of this matter then commenced on June 27, 2011 and continued through June 29, 2011. Testimony was adduced from all of the victims identified in the indictment, except for Sam Bassitt, Dan Reiff, and Greg Sneary, the three elected members of the Allen County Board of County Commissioners. This testimony established that three previous legal actions were relevant to this matter and that either during or after the pendency of these actions, Kinstle took various actions against the victims.

{¶ 6} The first relevant legal action was a 2005 tax foreclosure action against Kinstle. At that time, he owned property at 3320 Swaney Road in Harrod, Ohio.[1] Since Kinstle failed to pay the real estate taxes on the property for 10 years, Rhonda Eddy, as the Allen County Treasurer, initiated a tax foreclosure action. During the course of the action, James Link was appointed to serve as County Treasurer while Ms. Eddy became the Allen County Auditor.

> FN1. Kinstle also owned the adjacent property at 3340 Swaney Road, which was likewise subjected to tax foreclosure.

{¶ 7} Judge Richard Warren of the Allen County Court of Common Pleas presided over the action and granted a foreclosure decree in favor of the County Treasurer. Brandon Provonsil testified that he was interested in bidding on the property during the foreclosure process and that he visited the property to inspect it. During his time there, Kinstle confronted Provonsil, explained that he was undergoing the foreclosure process, and made a "veiled threat" against Provonsil. Trial Tr., p. 141.

{¶ 8} The Allen County Sheriff's Department, led by Sheriff Samuel Crish, conducted two auctions of the property, but neither produced a willing bidder. As a result, the Allen County Board of County Commissioners was offered the possibility of taking the property. After considering the possibility, the Commissioners, acting upon the advice of Allen County Administrator Becky Saine, decided to take the property. Consequently, on November 12, 2009, Judge Warren granted an order forfeiting the property to Allen County in care of the Board of County Commissioners. Once this order was handed down, Kinstle was required to vacate and while he was removing his personal effects from the property, Sergeant Alan Mefferd with the Allen County Sheriff's Department supervised Kinstle's actions. Sergeant Mefferd testified that during the course of his time

3

on the property, Kinstle threatened to file legal action against Sergeant Mefferd and to take action against his pension.

{¶ 9} Judge Warren, Treasurer Link, Auditor Eddy, Sheriff Crish, Administrator Saine, Sergeant Mefferd, and Provonsil all testified that during the pendency of the foreclosure action, they received purportedly legal documents demanding that they stop their involvement in the foreclosure process and pay large sums of money to Kinstle. Administrator Saine further testified that Commissioners Bassitt, Reiff, and Sneary also received such documents through the mail. The State introduced the documents that each of these victims received into evidence.

{¶ 10} Generally, the documents contain the following relevant items. First, Kinstle mailed each victim an "Affidavit of Specific Negative Averment, Opportunity to Cure, and Counterclaim" that includes fifty-three "counts," some of which refer to the actions of the above victims during the foreclosure action. Because Kinstle claimed the victims' actions were unlawful, he demanded that they "dismiss any and all claims against [him]," pay him a certain amount of damages, or respond to the various allegations in his "specific negative averment." State's Exhibit 1, p. 18.

{¶ 11} Subsequently, when the victims did not comply with Kinstle's demands, he mailed most of them a "Notice of Fault and Demand for Payment."[2] In these notices, Kinstle stated that the victims' failure to respond entitled him, under the Uniform Commercial Code, to the payment of astronomical sums of money from the victims. He claimed that he was entitled to the following payments: (1) approximately $101 billion from Judge Warren, Treasurer Link, Auditor Eddy, Administrator Saine, and Sergeant Mefferd; (2) $1.1 billion from Sheriff Crish; and (3) $6 million from Commissioners Bassitt, Reiff, and Sneary. While Kinstle did send a "specific negative averment" to Provonsil stating he was subject to joint and several liability, there was no testimony to indicate that Kinstle sent him a "notice of fault and demand for payment."

> FN2. Kinstle also mailed documents with other titles, such as a "Notice of Final Determination and Judgment in Nihil Dicit," that made the same allegations and demands. *See* State's Exhibit 29, p. 2.

{¶ 12} The second relevant legal action was a 2010 criminal case charging Kinstle with arson and criminal damaging. Judge Warren presided over the case, which arose from Kinstle's alleged action of setting fire to the grass on his property at 3320 Swaney Road. Allen County Sheriff Deputies Tim Jackson, Fred DePalma, Jerry Morris, Brock Douglass, and Gary Hook investigated the alleged arson. During the course of this investigation, the deputies spoke to Provonsil and several of Kinstle's neighbors, including Darin Rowe, Jerry Maus, Dean McCombs, Tim Binkley, and Kevin Kesner. Lieutenant Clyde Breitigan, the head of the Investigative Division of the Allen County Sheriff's Department, supervised the investigation.

{¶ 13} These officers and witnesses each received a similar set of documents from Kinstle during the pendency of the arson prosecution. Again, each victim received a "specific negative averment" that referred to his activities against Kinstle, that demanded

4

he drop his claims against Kinstle, and that required him to pay a large sum of money or answer Kinstle's various allegations. When the victims did not comply, most victims then received a notice of fault stating that Kinstle was entitled to damages. In total, Kinstle demanded the following payments: (1) approximately $101 billion from Lieutenant Breitigan, Deputy DePalma, Deputy Morris, Brock Douglass, Deputy Jackson, and Deputy Hook; and (2) approximately $409 billion from Rowe and Kesner.[3] There is no indication that McCombs, Binkley, or Maus received a "notice of fault and demand for payment."

> FN3. Judge Warren's, Sheriff Crish's, and Provonsil's demands are discussed previously in the discussion of the foreclosure case.

{¶ 14} The third relevant legal action was a civil action in which Kinstle was the named defendant. On September 8, 2009, Judge Jeffrey Reed found that Kinstle was a vexatious litigator. Consequently, Judge Reed ordered that Kinstle submit all proposed filings to him for approval and that Kinstle was only allowed to officially file his documents with the Allen County Clerk of Courts upon Judge Reed's approval. Due to Judge Reed's order, Margie Miller, a Deputy Clerk in the Clerk of Courts' Office, refused to accept several of Kinstle's filings. While this order was still in effect, both Judge Reed and Deputy Clerk Miller received "specific negative averments" that were similar to the ones discussed above. Deputy Clerk Miller also received a "notice of fault and demand for payment" stating that Kinstle was entitled to approximately $111 billion from her. There is no indication that Judge Reed received such a notice.

{¶ 15} During the course of the State's case, Kinstle agreed to the following stipulation: "As to all notarized documents sent to alleged victims in this case, the defendant appeared before the document, and either sent the document or caused the document to be sent to the alleged victim on each document." Trial Tr., p. 112. After the State rested its case, Kinstle moved for acquittal, but the trial court denied the motion.

{¶ 16} Kinstle then testified in his own defense, but his testimony was difficult to follow and mainly focused on his beliefs as they relate to the Redemptionist movement. The Redemptionists are a conspiracy-theory based movement that provides followers with purportedly legal ways to obtain certain sums of money from individuals under the Uniform Commercial Code.[4] After Kinstle's testimony, he rested and renewed his motion for acquittal, but the trial court again denied it.

> FN4. Sergeant Donald Cleland, the State's expert witness, testified at length as to the nature of the Redemptionist movement.

{¶ 17} On June 29, 2011, the jury returned a guilty verdict on all counts alleged in the indictment. The trial court held a sentencing hearing on July 14, 2011. Kinstle moved for the convictions to be merged as allied offenses of similar import, but the trial court denied the motion. After hearing arguments from counsel and a statement by Kinstle, the trial court, citing the statutory factors for sentencing and Kinstle's criminal background, which included convictions for felonious assault, resisting arrest, and criminal trespass, pronounced a prison term composed of two consecutive four year sentences, for a total

term of eight years. On July 19, 2011, the trial court issued a judgment entry of
sentencing that included the sentence and the following basis for it:

> the record, oral statements, any victim impact statements, the presentence report,
> the purposes and principles of sentencing under R.C. 2929.11, the seriousness and
> recidivism factors relevant to the offenses and the offender pursuant to R.C.
> 2929.12, and the need for deterrence, incapacitation, rehabilitation, and
> restitution. (Docket No. 169, p. 1).

*State v. Kinstle*, 985 N.E.2d 184, 187-190 (Ohio Ct. App. 2012); Doc. 30-22, pp. 1-9.

## II. Procedural Background

### A.  State Trial Court

On February 17, 2011, an Allen County Grand Jury issued an indictment charging

Kinstle with twenty-three counts of intimidation, in violation of R.C. § 2921.03(A).  Doc. 30-2.

On May 25, 2011, Kinstle, through counsel, filed a motion to dismiss all twenty-three

counts of the indictment on the grounds that R.C. §2921.03 is unconstitutional.  Doc. 30-4, p. 4.

On June 8, 2011, the trial court overruled Kinstle's motion to dismiss. Doc. 30-7.  On June 30,

2011, the jury found Kinstle guilty on all counts. Doc. 30-8.

On July 5, 2011, Kinstle, proceeding *pro se*, filed a motion for mistrial and/or dismissal.

Doc. 30-9.   On July 8, 2011, Kinstle, *pro se*, filed a supplement to his motion for mistrial and/or

dismissal with newspaper articles, Doc. 30-10, and a separate motion for dismissal, Doc. 30-11.

On July 11, 2011, Kinstle, *pro se*, filed a motion for acquittal and included a copy of his fee

agreement with his trial counsel. Doc. 30-12.

On July 15, 2011, the court entered a judgment of conviction convicting Kinstle on all

twenty-three counts of intimidation.  Doc. 30-13.  The court continued Kinstle's sentencing

hearing and took Kinstle's request for a pre-sentence investigation report under advisement.

Doc. 30-13.  On July 18, 2011, the trial court sentenced Kinstle to four years each on counts 1-12

with the sentences running concurrent with one another, and four years each on counts 13-23

with the sentences running concurrent with one another but consecutive to the prison term set in

counts 1-12, for an aggregate sentence of eight years. Doc. 30-14, pp. 4-5.

Also on July 18, 2011, the trial court overruled all Kinstle's post-verdict motions. Doc.

30-15.

### B. Motion for Sanctions, Motion to Reconvene Jury

On July 18, 2011, prior to the trial court's sentencing, Kinstle, pro se, filed a "motion for

sanctions order to seize exculpatory evidence withheld by Kenneth J. Rexford, et.al. demand for

new trial." Doc. 30-27. On July 19, 2011, the trial court overruled Kinstle's motion. Doc. 30-

28.

On July 20, 2011, Kinstle, pro se, filed a "motion to reconviene [sic] the jury for review

of existence impropriety, non-impartiality." Doc. 30-29. On July 25, 2011, the trial court

overruled Kinstle's motion. Doc. 30-30.

### C. Direct Appeal

On August 8, 2011, Kinstle, *pro se*, timely filed a notice of appeal. Doc. 30-16. In his

brief, Kinstle, through new counsel, presented the following assignments of error:

> 1. The trial court erred to the prejudice of appellant by overruling his motion to dismiss
> the indictment as a violation of the 14th Amendment to the United States Constitution, as
> well as the Article I section I of the Ohio Constitution.
>
> 2. The trial court erred to the prejudice of appellant/defendant by entering a guilty verdict
> that was against the manifest weight of the evidence.
>
> 3. The trial court committed an abuse of discretion by sentencing the defendant-appellant
> to two (2) consecutive sentence[s] of four (4) years in prison totaling eight (8) years of
> incarceration.

Doc. 30-19, p. 2.

On September 10, 2012, Kinstle, *pro se*, filed a motion to "take judicial notice of certain

discrepancy of judicial decisions . . . regarding due process clause violations and

misrepresentations" committed against him in a number of criminal and civil actions. Doc. 30-20.  On October 3, 2012, the Ohio Court of Appeals found this motion to be without merit and deemed his appeal fully briefed and ready for final disposition. Doc. 30-21.

On December 17, 2012, the state Court of Appeals overruled Kinstle's assignments of error and affirmed the trial court's judgment.  Doc. 30-22, p. 26.

### D.  Ohio Supreme Court

On February 13, 2013, Kinstle, *pro se*, filed a notice of appeal and a motion for delayed appeal in the Ohio Supreme Court.  Doc. 30-23, 30-24, 30-25.  On March 27, 2013, the Ohio Supreme Court denied Kinstle's motion for a delayed appeal and dismissed his case.  Doc. 30-26.

### E.  Petition to Vacate or Set Aside Judgment of Conviction or Sentence

On June 4, 2012, while his direct appeal was pending in the Ohio Court of Appeals, Kinstle, *pro se*, filed a "petition to vacate or set aside judgment of conviction or sentence" in the trial court raising the following twenty-three claims for relief:

1. Statement of constitutional claim: Sixth Amendment, U.S.A. Constitution; Section 10, Article 1, Ohio Constitution, right to be informed of nature and cause.

2. Statement of Constitutional Claim: Fourteenth and Fifth Amendment of the United States of America Constitution and Section Sixteen, Article I of the Ohio Constitution. Due process clause violation. Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211.

3. Statement of Constitutional Claim: Sixth Amendment, U.S.A. Constitution; Section 10, Article 1, Ohio Constitution right to confrontation of adverse witnesses, on direct and cross examination.

4. Statement of Constitutional Claim; Fifth and Fourteenth Amendments of the United States of America Constitution; Section 10, Article I, Ohio Constitution, right to due process and a fair trial.

5. Statement of Constitutional Claim: The court did go contrary to the separation of powers clause of the U.S.A. Constitution, which clearly separates the power of the legislative, judicial, and executive branches of gov't. The Ohio Constitution specifically lays out power in Article II, III, IV, as to vested power. See, generally, Ohio Constitution.

6. Statement of Constitutional Claim: Fifth and Fourteenth Amendment of the United States of America Constitution; Section 10., 10a., 16, Article I of the Ohio Constitution.

7. Statement of Constitutional Claim: Sixth Amendment U.S.A. Constitution; Section 10, Article I, Ohio Constitution. Also the Eighth Amendment of U.S.A. Constitution; Section 10, Article I, Ohio Constitution. Also the Eighth Amendment of U.S.A. Const.

8. Statement of Constitutional Claim: Sixth, First, Fifth Amendment U.S.A., & Sect. 10, 16 Ohio Constitution.

9. Statement of Constitutional Claim: Fifth, Sixth, Ninth, Eleventh Amendments of the U.S.A. Constitution, as well as Section 2, Article IV; Section 10, 16, Article I Ohio Constitution.

10. Statement of Constitutional Claim: Fifth, Sixth, Ninth, Eleventh Amendments and Section 2 Article IV of the U.S.A. Constitutional; Section 10, 16 Article I, Ohio Constitution.

11. Statement of Constitutional Claim: 6th, 9th 5th, 11th Amendments of U.S.A. Constitution. Section 10, 16, Art. 1, Ohio Constitution.

12. Statement of Constitutional Claim: First, Fourth, Fifth, Sixth, Eighth, Ninth, Eleventh, Fourteenth Amendment, U.S.A. Constitution; Section 10, 16 Article I, Ohio Constitution.

13. Statement of Constitutional Claim: First, Fifth, Sixth, Fourteenth, Amendments, U.S.A. Constitution, Section 10, 16, Article I, Ohio Constitution.

14. Statement of Constitutional Claim: First, Fifth, Sixth, Fourteenth Amendments of U.S.A. Constitution; Section 10, 16, Art. I, Ohio Constitution.

15. Statement of Constitutional Claim: First, Sixth Amendment of U.S.A. Constitution; Sect. 10, 16, Art. I Ohio Constitution.

16. Statement of Constitutional Claims: First, Fifth and Sixth Amendment, U.S.A. Constitution; Section 10, Article One, Ohio Constitution.

17. Statement of Constitutional Claim: Fifth Amendment.

18. Statement of Constitutional Claim: Fifth Amendment of U.S.A. Constitution Sect. 10, 16, Art. I Ohio Constitution.

19. Statement of Constitutional Claim: Sixth, Fourteenth Amendment of U.S.A. Constitution, Sect. 10, Art. I, Ohio Constitution.

20. Statement of Constitutional Claim: Fifth, Eighth Amendment U.S.A. Constitution, Sect. 10, Art. I Ohio Constitution.

21. Statement of Constitutional Claim: Fifth, Sixth, 14th Amendment U.S.A. Constitution, Sect. 10, Art. I Ohio Constitution.

22. Statement of Constitutional Claim: Fifth and Sixth Amendment U.S.A. Constitution, Section 10 Art. I, Ohio Constitution.

23. Statement of Constitutional Claim: 5th, 6th, 14th Amendment, U.S.A. Constitution, Sect. 10, Art. I Ohio Constitution.

Doc. 30-31, pp. 1-72.[6]  On June 14, 2012, Kinstle, *pro se*, filed a motion for leave to file his post-conviction petition. Doc. 30-32.

On June 28, 2012, the trial court denied Kinstle leave to file his petition for post-conviction relief and the petition for post-conviction relief.  Doc. 30-33.  The court did not issue findings of fact and conclusions of law.  Doc. 30-33.

On July 23, 2012, Kinstle, *pro se*, timely filed a notice of appeal from the denial of leave to file post-conviction relief and denial of post-conviction relief.  Doc. 30-34; 30-35.  In his brief, Kinstle raised the following sole assignment of error:

> The Trial Court erred to the prejudice of appellant by overruling the "Petition To Vacate Or Set Aside Judgment Of Conviction Or Sentence" as a violation of the 14th Amendment, united States of America Constitution, as well as Article I, Section 1 of the Ohio Constitution.

Doc. 30-36, p. 2.  On March 11, 2013, the Ohio Court of Appeals dismissed Kinstle's appeal, stating that the judgment he appealed—the trial court's June 28, 2012, decision denying post-conviction relief—was not a final appealable order because it lacked findings of fact and conclusions of law.  Doc. 30-35, p. 5.

Meanwhile, on July 12, 2012, Kinstle filed a demand for findings of fact and conclusions of law in the trial court, which the trial court denied on July 26, 2012.  Doc. 30-40; 30-3, p. 7.

Kinstle did not appeal this ruling.  Instead, on July 30, 2012, Kinstle filed a Motion for Leave for

---

[6]  Kinstle provided numerous pages describing the facts supporting each claim for relief.  *See, generally*, Doc. 30-31, pp. 1-74.

Reconsideration of his post-conviction petition to vacate or set aside judgment, adding an additional four claims for relief to the twenty-three claims contained in the earlier post-conviction petition.  Doc. 30-41.  Kinstle's four additional claims are as follows:

> Claim 24. Statement of Constitutional Claim: Sixth Amendment u.S.A. Constitution; Section 10, Article I, Ohio Constitution.
>
> Claim 25. Statement of Constitutional Claim: Fifth Amendment of united States of America; Section 10, Art. I, Ohio Constitution.
>
> Claim 26. Statement of Constitutional Claim: Fifth, Sixth and Fourteenth Amendment of the united States of America Constitution; Section 10 & 16 Art. I, Ohio.
>
> Claim 27. Statement of Constitutional Claim: Fifth, Sixth and Fourteenth Amendment; Sect. 10, Art. I Ohio Constitution.

Doc. 30-41, pp. 77, 80, 83, 86.

Thereafter, on November 16, 2012, Kinstle, *pro se*, filed a Motion for Leave to File an Amended Petition for Post-conviction Relief and a Motion to Supplement the Amended Petition for Post-conviction relief with an additional four claims.  Doc. 30-42, 30-43.  Kinstle presented the following four additional claims:

> Claim 28. Statement of Constitutional Claim: 1st Amendment right to redress grievances in Courts, 6th Amendment right to obtain witnesses in his favor, and a defense, 14th Amendment Right that "no state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.' Also, Section 1, 3, 16, Ohio Constitution, Article I.
>
> Claim 29. Statement of Constitutional Claim: 5th, Due Process, 6th nature and cause, 14th Equal Protection of Law, entered in the Amendments of the U.S.A. Constitution, and Sect. 1, 3, 16, 20, as well 10, Art. I, Ohio Constitution.
>
> Claim 30. Statement of Constitutional Claim: 1st Amendment Right of Redress, 5th Amendment Right to due process of law, 6th Amendment Right to demand Nature and Cause of Action, 14th Amendment Right to Equal Protection of Law. and Article I, Section 1, 3, 16, 20, 10 Ohio Constitution.

11

> Claim 31. Statement of Constitutional Claim: 1st, 5th, 6th, 14th, 8th Amendments of united States of America Constitution and Section 1st 3rd of Article I, Ohio Constitution and Sect. 19 and Art. IX.

Doc. 30-43, pp. 2, 5, 8, 11.  On December 27, 2012, the trial court overruled Kinstle's motions.

Doc. 30-3, 30-44.

### F.  State Habeas Petition

On December 3, 2012, Kinstle, *pro se*, filed a petition for writ of habeas corpus in the

Ohio Supreme Court.  Doc. 30-59; 30-60.  Kinstle presented two issues for review:

> 1. Whether R.C. 2921.03 violates Petitioner's u.S.A. and Ohio Constitutional Rights when it acts to restrict an individual['s] ability to redress grievances

> 2. Whether a Guilty Verdict for violation of R.C. 2921.03 is against the weight of the evidence, where no victim was dissuaded from his/her duty, and evidence fails to support a purpose of defendant to intimidate or hinder, when the duty they allege to be held, is not one lawful pursuant to law (to Sell or Convey Petitioner's 3320 Swaney Road, Allen County, Ohio property, unlawfully seized by Sheriff, by a void Order absent Jurisdictional Authority to be entered as a Foreclosure Order, and a previous Foreclosure Order that is not a Final Appealable Order.

Doc. 30-60, p. 2.

On December 31, 2012, Kinstle filed a notice with the Ohio Supreme Court requesting

"the cooperation and participation in the decision to release and or disclose Grand Jury

Transcripts in Allen Cty Common Pleas Court . . ."  Doc. 30-61, p. 1.  On January 23, 2013, the

Ohio Supreme Court dismissed Kinstle's petition.  Doc. 30-62.

### G.  Motion to Suspend Further Execution of Sentence and Motion for New Trial

On February 7, 2013, Kinstle, *pro se*, filed a motion in the trial court to suspend further

execution of his sentence based on "…newly discovered evidence produced by the [] court of

Judge Richard K. Warren…" regarding the Swaney Road property.  Doc. 30-46.  On March 12,

2013, the trial court overruled Kinstle's motion. Doc. 30-47.

On March 28, 2013, Kinstle, *pro se*, filed a notice of appeal.  Doc. 30-48.  On April 10, 2013, the Ohio Court of Appeals applied R.C. § 2323.52(F)(2), under which Kinstle had been declared a vexatious litigator, and dismissed his action, finding that further proceedings would be an abuse of process and that there were no reasonable grounds for an appeal.  Doc. 30-49, p. 2.

On May 10, 2013, Kinstle, *pro se*, filed a petition for writ of mandamus in the Ohio Supreme Court seeking to force the state Court of Appeals to permit him to appeal the March 12, 2013, trial court judgment denying his motion to suspend further execution of the sentence.  Doc. 30-51.  On May 28, 2013, Allen County Prosecutor Waldick moved to dismiss Kinstle's mandamus petition, and on June 6, 2013, the Third District Court of Appeals also moved for dismissal of the mandamus petition.  Doc. 30-52; 30-53.  On July 24, 2013, the Ohio Supreme Court granted both motions to dismiss.  Doc. 30-54.

### H.  Federal Habeas Petition

On May 2, 2013, Kinstle, *pro se*, filed his federal petition for a writ of habeas corpus.

Doc. 1.   Kinstle listed the following grounds for relief:

**Ground One:** Whether R.C. 2921.03 violates Petitioners u.S.A. and Ohio Constitutional Rights when it acts to restrict an individual['s] ability to redress grievances.

**Ground Two**: Whether a guilty verdict for violation of R.C. 2921.03 is against the weight of the evidence, where no victim was dissuaded from his/her duty, and evidence fails to support a purpose of defendant to intimidate or hinder, when the duty they allege to be held, is not one lawful pursuant to law (to Sell or Convey Petitioner's 3320 Swaney Road, Allen County, Ohio property, unlawfully seized by Sheriff, by a void order absent jurisdictional authority to be entered as a Forfeiture Order, and a previous Foreclosure Order that is not a Final Appealable Order, to cause enforcement of lien.

**Ground Three**: Petitioner was denied Nature and Cause of the Action contrary to Article I, Section 10, Ohio Constitution, and Sixth Amendment to u.S.A. Constitution.

**Ground Four**: 5th and 14th Amendment to u.S.A. Constitution and Section 16, Article I of Ohio Constitution. Due Process violation. Tibbs v. Florida (18982), 457 U.S. 31, 102 S.Ct. 2211.

**Ground Five**: 6th Amendment, u.S.A. Constitution; Section 10 Article I. Ohio Constitution. Right to confrontation of Adverse Witnesses, on Direct and Cross-Examination.

**Ground Six**: Statement of Constitutional Claim: 5th, 6th, and 14th Amendments to the u.S.A. Constitution; Section 10, 16, Article I, Ohio Constitution Right to Due Process and a Fair Trial by Impartial Parties.

**Ground Seven**: Trial Court did go contrary to the Separation of Powers Clauses to the united States of America Constitution, which clearly separates the powers of the legislative, judicial and executive branches of government. The Ohio Constitution specifically lays out power at Article II, III, IV as to vested power.  See Generally Ohio Constitution.

**Ground Eight**: Statement of Constitutional Claim: 5th, and 14th Amendment to the u.S.A. Constitution; Section 10, 10a, 16, Article I, Ohio Constitution.

**Ground Nine**: Statement of Constitutional claim: 1st, 4th, 5th, 6th, 8th, 9th, 11th, and 14th Amendment to the united States of America Constitution; Section 2, 10, 16 Article I, Art[]icle IV, Article VIII §2e, 2f, Sect. 20 §4, Sect. 4-6, 17, Art. XII, §2 and Art. III Sect. 20 violations.

**Ground Ten**: Statement of Constitutional Claim: 5th, 6th and 14th Amendment to the u.S.A. Constitution; Sect. 10, 16, Article I, Ohio Constitution.

**Ground Eleven**: Statement of Constitutional Claim: 1st, 5th, and 6th Amendment to the U.S.A. Constitution; Section 10, Article I, Ohio Constitution was violated.

**Ground Twelve**: Statement of Constitutional Claim: %th [sic], 6th 14th Amendments to the u.S.A. Constitution; Article I, Section 10, 16, Ohio Constitution.

**Ground Thirteen**: Statement of Constitutional Claim: 5th, ¢th [sic] and 14Th Amendment to the u.S.A. Constitution; Section 10, Article 1 Ohio Constitution.

**Ground Fourteen**: Statement of Constitutional Claim: 5TH Amendment to the u.S.A. Constitution: Section 10, Article 1, Ohio Constitution was violated by failure of trial Court to allow review by Defendant and D[e]fense Counsel, to check for errors on or in the PSI R[e]port.

Doc. 1, pp. 14-53.

On August 29, 2013, Respondent filed a Return of Writ.  Doc. 28.  Respondent argues that Ground Two is not cognizable; Grounds One, Two, and any count alleging the trial court abused its discretion by sentencing him to eight years in prison are procedurally defaulted; and

that Kinstle's remaining claims are unexhausted.  Doc. 28, pp. 41-48.  Respondent urges the

Court to issue a stay and impose a reasonable time limit for Kinstle to exhaust his state court

remedies before returning to federal court.  Doc. 28, p. 48.  Kinstle, in his Petition and Traverse,

concedes that many of his claims are unexhausted, but contends that he should be excused from

the exhaustion requirement because returning to state court to exhaust his remedies would be

futile.  *See, e.g*., Doc. 49, pp. 2, 26.

### III. Law & Analysis

#### A.  Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.

104-132, 110 Stat. 1214 ("AEDPA"), apply to Kinstle's habeas petition because he filed it after

the effective date of the AEDPA.  28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th

Cir. 20*07).  Under the AEDPA, a petitioner must meet certain procedural requirements in order

to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d

426, 430 (6th Cir. 20*06).  "Procedural barriers, such as statutes of limitations and rules

concerning procedural default and exhaustion of remedies, operate to limit access to review on

the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (20*01).

Although procedural default is sometimes confused with exhaustion, exhaustion and procedural

default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 20*06).  Failure

to exhaust applies when state remedies are "still available at the time of the federal petition."  *Id.

at 806* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court

remedies are no longer available, procedural default rather than exhaustion applies.  *Williams,

460 F.3d at 806*.

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted

all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal

constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

### B.  Summary of Claims Supporting Kinstle's Grounds for Relief

Kinstle's lengthy Petition is confusing.  It includes supporting facts that are often repetitive and beyond the scope of his grounds for relief.  For convenience, the undersigned reproduces Respondent's summary of Kinstle's claims supporting his grounds for relief, which the undersigned finds to be an accurate summary and which Kinstle, in his Traverse, does not dispute:

**Ground One's** stated claim is that the Intimidation statute for which Kinstle was convicted, R.C. 2921.03, is unconstitutional because it restricts a person's ability to redress grievances.  However, the supporting facts for this claim argue that the trial court abused its discretion by removing from the indictment the elements of "force" and "threat of harm" from the statute.  The supporting facts next claim that the statute is unconstitutional due to it being overbroad and vague, and criminalizes a person for exercising the person's right to "redress of grievances and of due process of law."  Respondent surmises that Petitioner may be

attempting to argue that the statute is vague and overbroad, and as applied to Petitioner, was used to criminalize Petitioner's protected speech in his communicative written and oral acts against the various victims.

**Ground Two's** stated claim, generally, is that the judgment of conviction was against the manifest weight of the evidence.

**Ground Three's** stated claim is that Kinstle was denied the nature and cause of the action in violation of the Sixth Amendment. The supporting facts for this claim then state that the jurisdiction of the trial court and the basis of the action was never explained to him, which deprived him of a fair trial. The supporting facts then close with the unsupported claim that defense counsel Rexford was ineffective at trial "by not giving a defense to Kinstle against the State action, little to no defense given."

**Ground Four's** stated claim simply claims a due process violation under the 5th and 14th Amendments, and cites to *Tibbs v. Florida*, 457 U.S. 31 (1982). The supporting facts essentially argue that the judgment of conviction was contrary to, or a misapplication of, federal law where the Intimidation offense elements of "force," "threat," and the mens rea element "knowingly" were not demonstrated by sufficient evidence (for a variety of reasons) and therefore should not have been charged to the jury for a decision on guilt.

**Ground Five's** stated claim argues that Kinstle was deprived of his right to confront witnesses at trial which resulted in a denial of a fair trial. The supporting facts claim that Allen County Board of Commissioners Sneary, Bassitt and Reiff failed to appear at trial to support the offenses contained in Counts 21, 22 and 23 of the Indictment, thereby depriving Kinstle of the right to confront these witnesses on direct and cross-examination.

**Ground Six's** stated claim argues that Kinstle was denied due process and a fair trial by "impartial parties." The supporting facts argues differing legal theories: 1) the trial court denied his request to know the nature and cause of the action, and the jurisdiction of the court; 2) the State committed a *Brady* violation by withholding exculpatory evidence from the defendant in the form of the sale of one of the foreclosed properties having to be advertised for sale a second time because it had not been advertised for sale properly; 3) the State committed a *Brady* violation by withholding exculpatory evidence from the defendant in the form of the phone records of Kevin Kesner, Rebecca Saine and neighbors of one of his foreclosed properties, and the identity of the neighbors of that foreclosed property; 4) that Rebecca Saine committed perjury when she testified her lawful duty as a public official to sell the foreclosed property for the county was denied by Kinstle's acts of Intimidation; 5) the State (the prosecutor, then the common pleas court, and then the public defender, as agents for the State) suppressed evidence, resulting in no tribunal being instituted "as all parties are the state," resulting in no court of record being instituted in Kinstle's earlier arson action (CR-2010-0251) or the challenged conviction herein; 6) the State waived their right to prosecute Kinstle as a result of the Brady violations and violating Ohio Civ.R. 9 and R.C. 2317.48 and 2921.04(C); 7) Kinstle was forced to use Public Defender Travis for the direct appeal, and Travis was ineffective "in not raising these grounds."

**Ground Seven's** stated claim presents a "separation of powers" claim. The supporting facts argue that the trial court acted as a legislature when the trial court modified the offense of Intimidation in the indictment by removing the elements of "force" and "threat of harm" in the State's Bill of Particulars, and reinserting the "knowingly" element into the offense during the jury instructions.

**Ground Eight's** stated claim alleges, without explanation or detail, a due process violation. The supporting facts for this claim appear to argue that the trial court abused its discretion in not granting defendant's motion for acquittal at trial based on insufficient evidence for the conviction.

**Ground Nine's** stated claim alleges, without explanation or detail, a violation of the 1st, 4th, 5th, 6th, 8th, 9th, 11th and 14th Amendments. The supporting facts essentially argue that the challenged convictions were against the weight of the evidence where: 1) the Allen County Prosecutor and Sheriff had no legal duty to foreclose on Kinstle's real property located at 3320 Swaney Road; 2) the initial sale of one parcel of the foreclosed property was voided due to the State's failure to properly advertise the sale and the sale had to be re-advertised by the State; 3) he had no knowledge he was not in rightful possession of one of the foreclosed properties, therefore could not have been trespassing on that property or obstructing official business regarding that property when he performed acts that would later be classified as Intimidation. Kinstle next claims that Intimidation relating to the 3920 Running Oak Trail property foreclosure constitutes Double Jeopardy because that same charge was settled earlier in Lima Municipal Court Case No. 10-CRB-00361A-C (the arson case); 4) he always held rightful deed and title in the foreclosed properties thereby voiding any subsequent acts of intimidation relating to those properties. Kinstle next claims that Allen County has been unjustly enriched by its wrongful acquisition of the foreclosed Kinstle properties where the delinquent property taxes were not lawfully imposed and the trial court lacked jurisdiction over the foreclosures and the criminal matters involving Kinstle. Kinstle next argues that Judge Reed (who presided over one of Kinstle's earlier foreclosure actions), committed perjury in the challenged criminal conviction trial by testifying that the common pleas court was not an admiralty court (yet stated in a journal entry in an earlier case (CV-2008-1736) that the court was an admiralty court). Kinstle next argues that the trial court never demonstrated it had jurisdiction over him. Finally, Kinstle argues that his adjudication as being a vexatious litigator was unlawful.

**Ground Ten's** stated claim alleges, without explanation or detail, a violation of the 5th, 6th and 14th Amendments. The supporting facts argue that the trial court judge (Judge Bassinger) abused discretion by ruling on documents that had not been entered on the docket by the Clerk of Court (Margie J. Murphy-Miller), and that the Clerk of Court abused her discretion and manipulated the record by not filing documents sent by Kinstle for filing. Kinstle next argues that the Clerk of Court had no duty to act in the earlier foreclosure actions and the weight of the evidence failed to demonstrate that Kinstle's acts against the Clerk, and others, in the foreclosure matters constituted the offense of Intimidation. Kinstle next argues that the Clerk's actions with regard to Kinstle's filings denied Kinstle a speedy trial and appellate review, due process and equal protection. Kinstle claims that the trial court lacked subject matter jurisdiction over the challenged conviction. Kinstle claims he was denied a fair and impartial trial where juror James Hefner was seated on the jury while

denying (allegedly falsely, according to Kinstle) during voir dire that he did not know any of the parties. Kinstle also argues that a fair and impartial trial was denied him where Clerk Miller-Murphy, and a number of witnesses (Judge Willamowski, Judge Rogers, and Magistrate Miller) were recipients of Kinstle's intimidating "legal" documents.

**Ground Eleven's** stated claim argues, without explanation or detail, a violation of the 1st, 5th and 6th Amendments. The supporting facts for this claim argue that original defense counsel (attorney William Mooney) and replacement defense counsel (attorney Kenneth Rexford), and direct appeal counsel (attorney Travis) were constitutionally ineffective in the following respects in the trial court: 1) Attorney Mooney failed to inquire into the validity of title for the two foreclosed parcels located, respectively, at 3320 and 3340 Swaney Road, which would have revealed that Kinstle held the superior paramount lien on the properties, causing the victims herein to have lacked any duty to lawfully foreclose on the parcels; 2) Trial counsel failed to create a strategy to defend Kinstle, failing to make a reasonable investigation for trial and present Redemptionist literature/recordings into evidence; 3) Attorney Rexford failed to address the issue of allied offenses / double jeopardy at sentencing; 4) Attorney Travis had inadequate contact with Kinstle during the direct appeal and failed to discuss the appellant's brief prior to filing it; Attorney Travis failed to allege on direct appeal the issues that trial counsel was ineffective.

**Ground Twelve's** stated claim, without explanation or detail, argues a violation of the 5th, 6th and 14th Amendments. The supporting facts argue that the court reporter in the trial court failed to transcribe and deliver copies of all proceeding transcripts to the direct appeals court, where the record that was prematurely certified on direct appeal did not contain transcripts of the arraignment/bond hearing and trial side bar conferences. Kinstle claims that due process was denied him in the appeal process and cannot be cured until every hearing, meeting and trial is transcribed and filed in the appellate record. Kinstle claims that continuing the appeal process in the state courts would be futile until all the appeals court judges are replaced and the complete transcripts are made available to the appeals court.

**Ground Thirteen's** stated claim, without explanation or detail, argues a violation of the 5th, 6th and 14th Amendments. The supporting facts for this claim argue that the State failed to produce transcripts of Deputy Hook's in car camera video which deprived defendant of what it was to defend against. Doc. 1, at PageID# 52. Kinstle concedes that the Hook's video was played at the jury trial, but that the court reporter did not transcribe the audio portion from that video, thereby depriving the appeals court of a complete record for a fair appellate review. Id.

**Ground Fourteen's** stated claim argues a due process violation under the 5th Amendment where the trial court failed to permit defendant and defense counsel to review the pre-sentence investigation (PSI) report for errors prior to sentencing. In the supporting facts, Kinstle advances the stated claim but also adds that the docket failed to contain an order from the trial court directing a mental evaluation of defendant at the court's expense. Kinstle next argues in the supporting facts that direct appeal new counsel Travis was constitutionally ineffective in not raising as an assignment of error the alleged non-disclosure of the PSI report to the defense prior to sentencing.

Doc. 28, pp. 26-37.

### C. Kinstle's Petition is a "mixed" petition because it contains exhausted and unexhausted claims

A "mixed" petition for habeas corpus relief is one in which the petition contains some claims that have been exhausted in the state courts and some that have not. *See Rhines v. Weber,* 544 U.S. 269, 271 (2005). When a court is presented with a mixed petition, the entire petition may be dismissed without prejudice, *Rose v. Lundy,* 455 U.S. 509, 510 (1982), or, under certain limited circumstances, a court may grant a stay to allow the petitioner to return to state court to exhaust his state remedies, *Rhines,* 544 U.S. at 277. A "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* Further, even if "good cause" is shown, before granting a stay a court must consider whether the unexhausted claims are potentially meritorious and whether the petitioner engaged in dilatory litigation tactics. *Id.* at 277-278.

Kinstle's Petition is a mixed petition. Grounds One and Two were raised on direct appeal and appear to be exhausted.[7] Respondent asserts, and Kinstle does not dispute, that Grounds Three through Eleven and Ground Thirteen were raised in Kinstle's post-conviction Petition to Vacate or Set Aside Judgment of Conviction or Sentence ("Petition to Vacate") and are unexhausted. *See* Doc. 28, pp. 28-37, 45; Doc. 1 (Petition), pp. 25, 26, 33, 36, 38, 40, 45, 49; Doc. 30-31 (Petition to Vacate), pp. 60-61 (Ground Three), p. 6 (Ground Four), p. 9 (Grounds Five & Six), p. 16 (Ground Seven), p. 24 (Ground Eight), pp. 31, 55-56 (Ground Nine), pp. 44, 66 (Ground Ten), p. 69 (Ground Eleven), p. 71 (Ground Thirteen). Respondent asserts, and

---

[7] Respondent argues that Ground Two is not cognizable on federal habeas review. Doc. 28, p. 41. Respondent also asserts that Ground One is unexhausted because it is procedurally defaulted. Doc. 28, p 42. The fact that Ground One may be procedurally defaulted does not make it unexhausted when, as here, the petitioner has no remaining avenue in state court to obtain relief on the claim. *See Coleman v. Thompson,* 501 U.S. 722, 732 (1991) (procedurally defaulted claim is technically exhausted because no remedies remain in state court).

Kinstle does not dispute, that Grounds Twelve and Fourteen are unexhausted.  Doc. 29, pp. 36, 37; Doc. 1 (Petition), pp. 51, 53.[8]

### 1.  Grounds Three through Eleven and Ground Thirteen

Grounds Three through Eleven and Ground Thirteen were presented in Kinstle's Petition to Vacate.  The trial court denied Kinstle's petition without issuing findings of fact and conclusions of law.  Doc. 30-33.  Kinstle appealed the trial court's denial of his petition.  The Ohio Court of Appeals dismissed Kinstle's appeal, stating that the judgment he appealed—the trial court's decision denying post-conviction relief—was not a final appealable order because it lacked findings of fact and conclusions of law.  Doc. 30-35, p. 5.

Kinstle did not appeal the state Court of Appeals' decision.  And, although Kinstle filed a demand for findings of fact and conclusions of law in the trial court, the trial court denied his demand and Kinstle did not appeal the trial court's order.  Kinstle may still seek a writ a mandamus in a superior court compelling the trial court to issue a final appealable order.  *See* *State ex rel. Konoff v. Moon*, 680 N.E.2d 989 (Ohio 1997) ("Mandamus will lie to compel a trial court to issue findings of fact and conclusions of law when it dismisses a petition for postconviction relief.").[9]  Accordingly, Grounds Three through Eleven and Ground Thirteen, which were raised in Kinstle's Petition to Vacate, are unexhausted.

### 2.  Grounds Twelve and Fourteen

Kinstle raised Grounds Twelve and Fourteen in his Motion for Leave of Reconsideration of Petition to Vacate or Set Aside Judgment of Conviction. *See* Doc. 30-41 (Motion for Leave of

---

[8]  Kinstle states that no appeal was heard by the state courts with respect to Grounds Twelve and Fourteen.  Doc. 1, p. 51, 53.  Kinstle raised both grounds in his Motion for Leave of Reconsideration of Petition to Vacate or Set Aside Judgment of Conviction.  Doc. 30-41 (Motion for Leave of Reconsideration), pp 1-7 (Ground Twelve), p. 80 (Ground Fourteen).  Kinstle's Motion for Leave of Reconsideration was overruled by the trial court and he did not appeal that decision. Docs. 30-3; 30-44.

[9]  A trial court is not required to issue findings and conclusions when the petition is untimely.  *State ex rel. Reynolds v. Basinger*, 791 N.E.2d 459, 460 (Ohio 2003).  It appears as though Kinstle's Petition to Vacate was timely filed.

Reconsideration), pp 1-7 (Ground Twelve), p. 80 (Ground Fourteen).  The trial court denied

Kinstle's Motion for Leave of Reconsideration and Kinstle did not appeal that order.  Kinstle

concedes that "no appeal was heard" on these issues due to the ineffectiveness of his appellate

counsel for failing to raise the grounds on direct appeal.  Doc. 1, pp. 51, 53.

In Ground Twelve, Kinstle argues that, with respect to his trial court proceedings, the

court reporter "failed to transcribe and deliver the total transcript[]s of any/all Hearings."  Doc. 1,

p. 50.  He contends that his appellate counsel was ineffective for failing to address the missing

transcripts that serve to "demonstrate whether or not Jurisdiction and Cause was ever established

by the Trial Court."  Doc. 1, p. 50.  In Ground Fourteen, Kinstle asserts that the trial court erred

because it failed to disclose the PSI Report for review, resulting in a denial of Kinstle's due

process rights.  Doc. 1, p. 53.  Kinstle also contends that the trial court failed to provide a

"competent doctor who could conduct a mental evaluation."  Doc. 1, p. 53.  All these issues

could have been raised on direct appeal.  Kinstle, in his Petition, states that these issues were not

raised on direct appeal because his appellate counsel was ineffective for not raising them.  Doc.

1, pp. 50, 53.[10]

Grounds Twelve and Fourteen are unexhausted because Kinstle can raise these claims

with the Ohio Court of Appeals in an Application to Reopen pursuant to Ohio Appellate Rule

26(B).  Rule 26(B) provides for a reopening of an appeal based on a claim of ineffective

assistance of appellate counsel.  R. 26(B)(1).  Although the time for filing a Rule 26(B)

application has passed, Kinstle can attempt to show good cause for filing his application late.  _Id._

The undersigned rejects Kinstle's assertion that his claims may not be raised in a Rule 26(B)

application because they allegedly contain evidence outside the record.  Doc. 49, p. 5.  Kinstle

---

[10]  A number of arguments Kinstle presents in Grounds Three through Eleven and Ground Thirteen include
allegations that his appellate counsel was ineffective for not raising the issues on direct appeal.  _See, e.g._, Doc. 1, p.
24.

argues that, because a ruling in a prior civil case rescinded the title of property to the Board of Commissioners, the property always belonged to him and, therefore, he could not be charged with intimidation.  Doc. 49, p. 5.   However, that evidence has no bearing on Grounds Twelve and Fourteen and evidence pertaining to those grounds is in the record.  Notably, the trial court discussed Kinstle's PSI Report during his sentencing hearing (Doc. 30-70, p. 9-11, 28-29), and Kinstle's counsel referenced the sentencing recommendation (Doc. 30-70, p. 22).  The trial court discussed Kinstle's mental examination.  Doc. 30-66, pp. 3-6.  Filings with respect to the alleged missing transcripts have been well-documented on the record.  *See, e.g*., Doc. 30-3, p. 8; Doc. 30-17, p. 3.  Accordingly, Grounds Twelve and Fourteen are unexhausted because Kinstle can still raise them in a Rule 26(B) application.

In summary, Grounds Three through Fourteen are unexhausted, resulting in a mixed habeas petition.  *See* Rhines, 544 U.S. at 271.

### D.  Kinstle is not entitled to a stay and abeyance

In determining whether to dismiss a mixed petition in its entirety or to stay the proceedings while the petitioner returns to state court to exhaust his remedies, a court considers whether the petitioner had good cause for failing to exhaust his claims in state court.  Rhines, 544 U.S. at 277.  "[I]f a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all." *Id*. (citing *Zarvela v. Artuz*, 254 F.3d 374, 380-381 (2d Cir. 2001)).

Here, Kinstle argues that good cause exists for his failure to exhaust his claims in state court because he "has filed dozens of request[s] to allow the state to correct its errors in the [underlying] action, [and] they refused to do so."  Doc. 49, p. 2.  Kinstle describes his filings:

> (1) June 26, 2012, Motion for Initial Appearance, Arraignment/Bond Hearings, Bond Revocation Hearing Transcripts To Transcribed by Court Reporter To Allow a Constitutional Trial, the Trial/Pre-Trial Transcripts are yet to be typed and presented with

the record, as the arraignment/Bond Hearing is not[] Transcribed, . . . to demonstrate that the jurisdiction of the Court or Subject-matter of the Judge was ever entered in proceedings, and that the correct address was given Judge Basinger, who miswrote same to give to the Clerk of Court, Kinstle the man was held responsible for Judge Basigner's Inadvert[e]nce, the record should be supplemented this date to allow a fair review to be had; (2) Nov. 16 2012, a Motion to Supplement Amended Petition To Vacate Or Set Aside Judgment of Conviction Or Sentence Including Affidavits And Supportive Evidence, Such was not responded to; (3) July 8, 2012, Kinstle sent for filing a Demand For Findings of Facts and Conclusions of Law, such was denied, unanswered; (4) Notice of Acceptance of a Judicial Notice, was accepted by Non-response; (5) on March 27, 2013, S. Ct. of Ohio denied a Motion for Delayed Appeal of the Allen County Court of Appeals; No. 1-11-45, they in effect have already waived the State right to settle the issue in state court; (6) September 04, 2013, S. Ct. of Ohio declined to accept Jurisdiction of the Appeal pursuant to S. Ct. Prac. R. 7.08(B)(4), for Allen County Court of Appeals No. 1-13-12; (7) On 7 August 2012, "Notice of Perjury, Demand for Release, and Investigation" was filed after that date, no response returned by Court, waiving its right to settle issues; (8) On 7 Feb. 2013, a "Motion For New Trial" was journalized, unanswered, waiving state right to resolve issues in State Common Pleas Courts; as for Third District Court (9) a Petition For Transcripts Second Request with Request For Extension of Time, Dismissal was filed (sent 3 Jan. 2012) Transcripts of the Arraignment and Bond Hearings are not yet Transcribed. (10) 26 Dec. 2011 a Request For Complete Record to be filed in the Appellate Court was made, such was unanswered; (11) Motion For Removal, of Appeal Judges was made, sent 22 Jan. 2013, remains unanswered; (12) regarding the 17 Dec 2012 Opinion of Third Dist Ct. No. CA01-11-045, a Judicial Notice of FRAUD AND MISREPRESENTATION, JUDICIAL MISCONDUCT, NOTICE OF SUIT was sent for filing therein.  Such was responded to, recognized as a Motion For Reconsideration and denied; (13) An Affidavit of Authorized Representative Nicholas-Joseph; Kinstle In Support Of Motion For Certificate of Reasonable Doubt and Bail Pending Appeal, was sent 9 Jan. 2013 for Journalization, no response was made; (14) 1 Sept. 2012, a Motion For Orders was sent for journalization in CA01-11-45, no response; (15) 1 March 2012, A Notice of Objection, Demand for Assistance of Counsel (Effective) with Order Demand was sent for journalization in CA01-11-45, no response.

Doc. 49, pp. 2-4.  "Therefore," Kinstle asserts, "it should be settled [he] did make dozens of attempts to resolve the issues in the State Courts already to no avail."  Doc. 49, p. 4.

Kinstle's allegation that the state courts refused to act on his filings is incorrect.  In fact, the motions cited by Kinstle that he claims were "unanswered" were promptly resolved by the courts.  *See* Doc. 30-3, p. 6 (resolving (2), the Nov. 16, 2012, filing, on 12/27/2012); Doc. 30-3, p. 7 (resolving (3) on 7/26/2012); Doc. 30-3, p. 6 (resolving (7) in two entries on 12/27/2012); Doc. 30-3, p. 5 (resolving (8) on 3/12/2013); Doc. 30-3, p. 8 (resolving (10) on 1/12/2012); Doc.

30-35, p. 1 (resolving (11) on 3/13/2013); Doc. 30-35, p. 1 (resolving (13) on 3/13/2013); Doc.

30-17, p. 2 (resolving (14) on 10/3/2012); Doc. 30-17, p. 2 (resolving (15) on 3/12/2012).  The

fact that Kinstle filed fifteen unsuccessful motions in state court after his conviction does not

absolve him from his obligation to seek review using appropriate state court channels.  That the

state courts denied Kinstle's motions indicates not that the state courts were practicing

gamesmanship, as Kinstle alleges (Doc. 1, p. 58), but that his motions simply lacked merit.

Finally, the undersigned notes that Kinstle was declared a vexatious litigator by the trial court in

September 2009, *see Kinstle*, 985 N.E.2d at 189, and by the Ohio Supreme Court in July 2013,

Docs. 30-55; 30-58.  Thus, he is required to comply with R.C. § 2323.52(F)(2):

> A person who is subject to an order entered pursuant to division (D)(1) of this section and
> who seeks to institute or continue any legal proceedings in a court of appeals or to make
> an application, other than an application for leave to proceed under division (F)(2) of this
> section, in any legal proceedings in a court of appeals shall file an application for leave to
> proceed in the court of appeals in which the legal proceedings would be instituted or are
> pending. The court of appeals shall not grant a person found to be a vexatious litigator
> leave for the institution or continuance of, or the making of an application in, legal
> proceedings in the court of appeals unless the court of appeals is satisfied that the
> proceedings or application are not an abuse of process of the court and that there are
> reasonable grounds for the proceedings or application. If a person who has been found to
> be a vexatious litigator under this section requests the court of appeals to grant the person
> leave to proceed as described in division (F)(2) of this section, the period of time
> commencing with the filing with the court of an application for the issuance of an order
> granting leave to proceed and ending with the issuance of an order of that nature shall not
> be computed as a part of an applicable period of limitations within which the legal
> proceedings or application involved generally must be instituted or made.

*Id*.

Kinstle does not assert that the state courts incorrectly applied R.C. § 2323.52(F)(2) when

considering his court filings or that he would be unable to comply with R.C. § 2323.52(F)(2).  He

merely shows that he flooded the state courts' dockets with frivolous filings.  This showing does

not demonstrate cause for Kinstle's failure to exhaust state remedies.  Instead, Kinstle's frequent

filings only caused delay.[11] *See Rhines*, 544 U.S. at 277 (a court should not stay federal habeas proceedings when a petitioner engaged in abusive litigation tactics or intentional delay).[12] Accordingly, the undersigned finds that Kinstle has not to have shown good cause for his failure to exhaust his state remedies and that a stay is not warranted.

### E. Kinstle does not show that returning to state court would be futile

Kinstle argues that it would be futile for him to return to state court to exhaust his state remedies and cites *Turner v. Bagley*, 401 F.3d 718 (6th Cir. 2005), in support. Doc. 49, p. 2. In *Turner*, the petitioner directly appealed his conviction to the state court of appeals, but the state court of appeals did not issue a decision until nearly eleven years later. 401 F.3d at 723. The delay was caused by the state court of appeals permitting numerous court-appointed attorneys to withdraw from representing Turner without filing appellant briefs, thereby continually postponing Turner's appeal. *Id.* at 726. The Sixth Circuit found that the failure of the appellate

---

[11] After Kinstle filed a notice of direct appeal, he filed the following documents in the state trial court: petition for judicial release; supplemental to the December 5, 2011, judicial release petition; petition for docket sheet order against clerk of court and order against clerk of court to deliver the case file complete record in its entirety; motion for production of investigator Mark A Baker's file and bad acts reports and the BCI file and bad acts reports of each witness and expert witness as sought in discovery; motion to disclose grand jury transcripts Fed R of Crim P 6(e)(3)(e)(ii) with memorandum in support; motion for expert assistance; motion for initial appearance, arraignment / bond hearings, bond revocation hearing transcripts transcribed by court reporter to allow a constitutional trial; motion to recuse; motion to take judicial notice with memorandum in support; petition for judicial release; notice of rescinding renunciation of affidavit of specific negative averment opportunity to cure and counterclaim; notice of perjury, demand for release and investigation; defendant's order to compel, notice to court of failure to be delivered judgment entry's and file stamped copies of motions and pleadings; motion to recuse and request criminal investigation; petition for judicial release / request for medical care; notice of motion for change of venue; motion to suspend further execution of jail sentence; motion to arrest judgment; notice to court of fraud, attempted conversion and conversion, notice of suit, demand for return of property (Doc. 30-3, pp. 8-15); in the state Court of Appeals: petition for information and copies of unfiled documents; notice of dismissal of court appointed counsel Christopher T. Travis, also demand order for original transcripts; motion for stay of execution of sentence and bond release as no crime was committed; motion to suspend/stay execution of sentence and bail bond; motion to take judicial notice; motion for orders; notice to court request for grand jury transcripts; motion for certificate of reasonable doubt and bail pending appeal; motion for response to motion for orders; judicial notice of pain and suffering, cruel and unusual punishment, demand for orders; notice of fraud, impropriety and misconduct; judicial notice of fraud and misrepresentation, judicial misconduct, notice of suit (Doc. 30-17, pp. 1-3); motion for certificate of reasonable doubt and for bail pending appeal; notice of impropriety notice of lack of jurisdiction and matto [sic] jurisdiction; motion for removal (Doc. 30-35, p. 1); in the Ohio Supreme Court: motion to dismiss of the Judges of the Third District Court of Appeals; motion to strike motion to dismiss of Juergen A. Waldick; motion for default judgment against Juergen A. Waldick; request for judicial notice (Doc. 30-50, p. 2); motion to consolidate cases (Doc. 30-55, p. 2).

[12] Kinstle has also been deemed to have engaged in vexatious litigation in this case. *See* Doc. 47.

court to hear Turner's appeal was not caused by Turner, but was caused by his attorneys and the court of appeals.  *Id*.  The Court stated, "[a] habeas petitioner such as Turner who makes frequent but unavailing requests to have his appeal processed in state court is not required to take further futile steps in state court in order to be heard in federal court, even if the state court subsequently decides his appeal."  *Id*. (internal quotation marks and citations omitted).

Kinstle had his direct appeal heard in a timely manner; it is his post-conviction motion that he complains has not been promptly adjudicated.  In *Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir. 1992), the Sixth Circuit, in a pre-AEDPA case, found that the petitioner was excused from exhaustion requirements when the state trial court failed to issue findings of fact and conclusions of law on his post-conviction motion for over three years.  In *Workman*, however, the trial court failed to issue findings and conclusions after the state court of appeals had remanded the case instructing the trial court to issue findings and conclusions.  *Id*. at 1342.  Here, the Ohio Court of Appeals did not instruct the trial court to issue findings and conclusions.  As noted, *supra*, Kinstle did not appeal the trial court's denial of his demand for findings of fact and conclusions of law.  He can seek mandamus in a higher court directing the trial court to issue such findings and conclusions.[13]  *See Konoff*, 680 N.E.2d 989.  Moreover, it cannot be said that Kinstle has made "frequent but unavailing requests to have his appeal processed in state court." *See Turner*, 401 F.3d at 726.  To be sure, Kinstle has made frequent and unavailing requests to the state courts regarding the soundness of his conviction in general, but he has not made frequent and unavailing requests to have the trial court issue findings of fact and conclusions of law.  Kinstle does not allege that there is a delay on the part of the state precluding him from

---

[13]  Kinstle is knowledgeable about filing mandamus complaints.  *See* Doc. 30-56 (Kinstle's Petition for the Issuance of Writ of Mandamus in the Ohio Supreme Court requesting that the Ohio Supreme Court order a new trial and instruct the trial court to permit him to file a 42 U.S.C. § 1983 complaint, among other things).

proceeding with a Rule 26(B) application on his unexhausted ineffective assistance of appellate counsel claims.

Kinstle's other assertions regarding futility are unavailing. His statement that it would be unjust to send him "back to a whore's nest of liars, cheats and thieves of county of Allen" (Doc. 49, p. 14) is not compelling. Nor is his complaint that his delayed appeal was denied for failing to conform to size and page requirements. Doc. 1, p. 55. Kinstle's remaining arguments center around his belief that he would not prevail in state court because of judicial bias and the court "trampl[ing] in the ground" all processes available to him. Doc. 1, pp. 57, 62. Such an argument is not persuasive. Finally, Kinstle's status as a vexatious litigator does not prevent him from pursuing legitimate claims in state court. *See Bozsik v. Bagley*, 2011 WL 4629023, at *5 (N.D.Ohio Sept. 30, 2011) (vexatious litigator status does not prevent a petitioner from exhausting legitimate claims in state court). Because Kinstle has not made a convincing argument that it would be futile for him to return to state court to exhaust his claims, his failure to exhaust his claims should not be excused by the Court.

### F. Kinstle should be permitted to file an amended petition deleting the unexhausted grounds. If he fails to do so, his Petition should be dismissed without prejudice.

When a stay is inappropriate in a mixed petition case and the petition will be dismissed in its entirety, a federal district court should give the petitioner an opportunity to file an amended petition without the unexhausted claims. *See Rhines*, 544 U.S. at 278 ("if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief."). Although Kinstle has not shown that dismissal of his entire Petition would impair his right to obtain federal habeas relief, the undersigned

recommends that Kinstle be permitted to file an amended petition without the unexhausted claims if he so chooses.  Thus, it is recommended that Kinstle be permitted to file an amended petition deleting Grounds Three through Fourteen.  If Kinstle fails to file an amended petition without Grounds Three through Fourteen, the Court should dismiss his entire Petition.

### IV. Conclusion and Recommendation

For the reasons stated above, the undersigned finds that Kinstle's habeas Petition is a mixed petition.  The undersigned recommends that Kinstle be afforded a reasonable period of time to file an amended petition deleting his unexhausted grounds, Grounds Three through Fourteen.  If Kinstle does not file an amended petition deleting Grounds Three through Fourteen, his entire Petition should be dismissed without prejudice.


Dated: March 30, 2015

Kathleen B. Burke
United States Magistrate Judge


### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).