IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS J. KINSTLE, | ) | CASE NO. 3:13CV998 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| JASON BUNTING, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Nicholas J. Kinstle, ("Petitioner" or "Kinstle") filed a Petition (Doc. 1) and,

thereafter, an Amended Petition (Doc. 75) in this habeas corpus action brought under 28 U.S.C. §

2254. Kinstle, an inmate at the Marion Correctional Institution, is a self-described

"Redemptionist"[1] who was convicted by an Allen County, Ohio, Court of Common Pleas jury of

twenty-three counts of intimidation under Oh. Rev. Code § 2921.03(A).[2] Doc. 30-13, pp. 4-6.[3]

*State v. Kinstle*, No. CR2011 0048 (Allen Cty. Common Pleas Ct. filed July 15, 2011). On July

19, 2011, the trial court sentenced Kinstle to an aggregate prison term of eight years comprised

of concurrent four year sentences on each of counts 1-12 followed consecutively by concurrent

four year sentences on each of counts 13-23. Doc. 30-14, pp. 4-6.

---

[1] *See* ¶ 16 of the state court of appeals' opinion, quoted below, describing Kinstle's trial testimony and that of the State's expert witness who described the nature of the Redemptionist movement.

[2] Oh. Rev. Code § 2921.03 is Ohio's intimidation statute. Subsection (A) provides:

> No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the duties of the public servant, party official, attorney, or witness.

[3] Doc. page citations are to ECF Doc. page numbers.

On March 30, 2015, the undersigned issued a Report recommending that the Court find that Kinstle's Petition for habeas corpus (Doc. 1) was a mixed petition containing exhausted and unexhausted claims; that Kinstle was not entitled to a stay of this action while he exhausts his unexhausted claims in state court; and that Kinstle be directed to file an amended petition deleting the unexhausted grounds. Doc. 62. The Court adopted the undersigned's Report on October 29, 2015, and directed Kinstle to file an Amended Petition containing only his exhausted grounds: Grounds One, Two, Twelve and Fourteen. Doc. 72. Kinstle filed his Amended Petition on November 20, 2015, including those grounds. Doc. 75.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, the undersigned recommends that Kinstle's Amended Petition for Writ of Habeas Corpus (Doc. 75) be **DISMISSED** because his grounds are procedurally defaulted.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008). The Allen County Court of Appeals, Third Appellate District of Ohio, set forth the facts as follows:[4]

> {¶ 2} On February 17, 2011, the Allen County Grand Jury indicted Kinstle with 23 counts of intimidation in violation of R.C. 2921.03(A), a felony of the third degree. The counts alleged intimidation of the following victims: (1) Count I—Darin Rowe; (2) Count II—Jerry Maus; (3) Count III—Dean McCombs; (4) Count IV—Tom Binkley; (5) Count V—Kevin Kesner; (6) Count VI—Branden Provonsil; (7) Count VII—Margie Miller; (8) Count VIII—Jim Link; (9) Count IX—Clyde Breitigan; (10) Count X—Jeffrey Reed;

---

[4] The facts are taken from the Third District Court of Appeals' decision *State v. Kinstle*, Case No. 1-11-45 (Ohio Ct. App. Dec. 17, 2012); 985 N.E.2d 184 (Ohio Ct. App. 2012). Kinstle has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

(11) Count XI—Richard Warren; (12) Count XII—Rhonda Eddy; (13) Count XIII—Becky Saine; (14) Count XIV—Al Mefferd; (15) Count XV—Fred DePalma; (16) Count XVI—Jerry Morris; (17) Count XVII—Brock Douglass; (18) Count XVIII—Sam Crish; (19) Count IXX—Gary Hook; (20) Count XX—Tim Jackson; (21) Count XXI—Greg Sneary; (22) Count XXII—Sam Bassitt; and (23) Count XXIII—Dan Reiff.

{¶ 3} The indictment arose out of Kinstle's production and transmission of various notarized documents to the above-named victims demanding that they abstain from performing certain actions against him or pay him a substantial amount of money. The documents have the veneer of being official legal filings due to their format and language, but none of them were ever filed with a court. At the time of the receipt of these documents, each victim was involved in legal proceedings against Kinstle as a judge, witness, or governmental official.

{¶ 4} On May 25, 2011, Kinstle moved to dismiss the indictment on the basis that R.C. 2921.03 is unconstitutional. The trial court denied the motion on June 8, 2011.

{¶ 5} The jury trial of this matter then commenced on June 27, 2011 and continued through June 29, 2011. Testimony was adduced from all of the victims identified in the indictment, except for Sam Bassitt, Dan Reiff, and Greg Sneary, the three elected members of the Allen County Board of County Commissioners. This testimony established that three previous legal actions were relevant to this matter and that either during or after the pendency of these actions, Kinstle took various actions against the victims.

{¶ 6} The first relevant legal action was a 2005 tax foreclosure action against Kinstle. At that time, he owned property at 3320 Swaney Road in Harrod, Ohio.[1] Since Kinstle failed to pay the real estate taxes on the property for 10 years, Rhonda Eddy, as the Allen County Treasurer, initiated a tax foreclosure action. During the course of the action, James Link was appointed to serve as County Treasurer while Ms. Eddy became the Allen County Auditor.

> FN1. Kinstle also owned the adjacent property at 3340 Swaney Road, which was likewise subjected to tax foreclosure.

{¶ 7} Judge Richard Warren of the Allen County Court of Common Pleas presided over the action and granted a foreclosure decree in favor of the County Treasurer. Brandon Provonsil testified that he was interested in bidding on the property during the foreclosure process and that he visited the property to inspect it. During his time there, Kinstle confronted Provonsil, explained that he was undergoing the foreclosure process, and made a "veiled threat" against Provonsil. Trial Tr., p. 141.

{¶ 8} The Allen County Sheriff's Department, led by Sheriff Samuel Crish, conducted two auctions of the property, but neither produced a willing bidder. As a result, the Allen County Board of County Commissioners was offered the possibility of taking the property. After considering the possibility, the Commissioners, acting upon the advice of Allen County Administrator Becky Saine, decided to take the property. Consequently, on

November 12, 2009, Judge Warren granted an order forfeiting the property to Allen County in care of the Board of County Commissioners.  Once this order was handed down, Kinstle was required to vacate and while he was removing his personal effects from the property, Sergeant Alan Mefferd with the Allen County Sheriff's Department supervised Kinstle's actions. Sergeant Mefferd testified that during the course of his time on the property, Kinstle threatened to file legal action against Sergeant Mefferd and to take action against his pension.

{¶ 9} Judge Warren, Treasurer Link, Auditor Eddy, Sheriff Crish, Administrator Saine, Sergeant Mefferd, and Provonsil all testified that during the pendency of the foreclosure action, they received purportedly legal documents demanding that they stop their involvement in the foreclosure process and pay large sums of money to Kinstle. Administrator Saine further testified that Commissioners Bassitt, Reiff, and Sneary also received such documents through the mail. The State introduced the documents that each of these victims received into evidence.

{¶ 10} Generally, the documents contain the following relevant items. First, Kinstle mailed each victim an "Affidavit of Specific Negative Averment, Opportunity to Cure, and Counterclaim" that includes fifty-three "counts," some of which refer to the actions of the above victims during the foreclosure action. Because Kinstle claimed the victims' actions were unlawful, he demanded that they "dismiss any and all claims against [him]," pay him a certain amount of damages, or respond to the various allegations in his "specific negative averment." State's Exhibit 1, p. 18.

{¶ 11} Subsequently, when the victims did not comply with Kinstle's demands, he mailed most of them a "Notice of Fault and Demand for Payment."[2] In these notices, Kinstle stated that the victims' failure to respond entitled him, under the Uniform Commercial Code, to the payment of astronomical sums of money from the victims. He claimed that he was entitled to the following payments: (1) approximately $101 billion from Judge Warren, Treasurer Link, Auditor Eddy, Administrator Saine, and Sergeant Mefferd; (2) $1.1 billion from Sheriff Crish; and (3) $6 million from Commissioners Bassitt, Reiff, and Sneary. While Kinstle did send a "specific negative averment" to Provonsil stating he was subject to joint and several liability, there was no testimony to indicate that Kinstle sent him a "notice of fault and demand for payment."

> FN2. Kinstle also mailed documents with other titles, such as a "Notice of Final Determination and Judgment in Nihil Dicit," that made the same allegations and demands. *See* State's Exhibit 29, p. 2.

{¶ 12} The second relevant legal action was a 2010 criminal case charging Kinstle with arson and criminal damaging. Judge Warren presided over the case, which arose from Kinstle's alleged action of setting fire to the grass on his property at 3320 Swaney Road. Allen County Sheriff Deputies Tim Jackson, Fred DePalma, Jerry Morris, Brock Douglass, and Gary Hook investigated the alleged arson. During the course of this investigation, the deputies spoke to Provonsil and several of Kinstle's neighbors, including Darin Rowe, Jerry Maus, Dean McCombs, Tim Binkley, and Kevin Kesner.

Lieutenant Clyde Breitigan, the head of the Investigative Division of the Allen County Sheriff's Department, supervised the investigation.

{¶ 13} These officers and witnesses each received a similar set of documents from Kinstle during the pendency of the arson prosecution. Again, each victim received a "specific negative averment" that referred to his activities against Kinstle, that demanded he drop his claims against Kinstle, and that required him to pay a large sum of money or answer Kinstle's various allegations. When the victims did not comply, most victims then received a notice of fault stating that Kinstle was entitled to damages. In total, Kinstle demanded the following payments: (1) approximately $101 billion from Lieutenant Breitigan, Deputy DePalma, Deputy Morris, Brock Douglass, Deputy Jackson, and Deputy Hook; and (2) approximately $409 billion from Rowe and Kesner.[3] There is no indication that McCombs, Binkley, or Maus received a "notice of fault and demand for payment."

> FN3. Judge Warren's, Sheriff Crish's, and Provonsil's demands are discussed previously in the discussion of the foreclosure case.

{¶ 14} The third relevant legal action was a civil action in which Kinstle was the named defendant. On September 8, 2009, Judge Jeffrey Reed found that Kinstle was a vexatious litigator. Consequently, Judge Reed ordered that Kinstle submit all proposed filings to him for approval and that Kinstle was only allowed to officially file his documents with the Allen County Clerk of Courts upon Judge Reed's approval. Due to Judge Reed's order, Margie Miller, a Deputy Clerk in the Clerk of Courts' Office, refused to accept several of Kinstle's filings. While this order was still in effect, both Judge Reed and Deputy Clerk Miller received "specific negative averments" that were similar to the ones discussed above. Deputy Clerk Miller also received a "notice of fault and demand for payment" stating that Kinstle was entitled to approximately $111 billion from her. There is no indication that Judge Reed received such a notice.

{¶ 15} During the course of the State's case, Kinstle agreed to the following stipulation: "As to all notarized documents sent to alleged victims in this case, the defendant appeared before the document, and either sent the document or caused the document to be sent to the alleged victim on each document." Trial Tr., p. 112. After the State rested its case, Kinstle moved for acquittal, but the trial court denied the motion.

{¶ 16} Kinstle then testified in his own defense, but his testimony was difficult to follow and mainly focused on his beliefs as they relate to the Redemptionist movement. The Redemptionists are a conspiracy-theory based movement that provides followers with purportedly legal ways to obtain certain sums of money from individuals under the Uniform Commercial Code.[4] After Kinstle's testimony, he rested and renewed his motion for acquittal, but the trial court again denied it.

> FN4. Sergeant Donald Cleland, the State's expert witness, testified at length as to the nature of the Redemptionist movement.

{¶ 17} On June 29, 2011, the jury returned a guilty verdict on all counts alleged in the indictment. The trial court held a sentencing hearing on July 14, 2011. Kinstle moved for the convictions to be merged as allied offenses of similar import, but the trial court denied the motion. After hearing arguments from counsel and a statement by Kinstle, the trial court, citing the statutory factors for sentencing and Kinstle's criminal background, which included convictions for felonious assault, resisting arrest, and criminal trespass, pronounced a prison term composed of two consecutive four year sentences, for a total term of eight years. On July 19, 2011, the trial court issued a judgment entry of sentencing that included the sentence and the following basis for it:

> the record, oral statements, any victim impact statements, the presentence report, the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors relevant to the offenses and the offender pursuant to R.C. 2929.12, and the need for deterrence, incapacitation, rehabilitation, and restitution. (Docket No. 169, p. 1).

*State v. Kinstle*, 985 N.E.2d 184, 187-190 (Ohio Ct. App. 2012); Doc. 30-22, pp. 1-9.

## II. Procedural Background

### A. State Trial Court

On February 17, 2011, an Allen County Grand Jury issued an indictment charging Kinstle with twenty-three counts of intimidation, in violation of R.C. § 2921.03(A). Doc. 30-2.

On May 25, 2011, Kinstle, through counsel, filed a motion to dismiss all twenty-three counts of the indictment on the grounds that R.C. §2921.03 is unconstitutional. Doc. 30-4, p. 4. On June 8, 2011, the trial court overruled Kinstle's motion to dismiss. Doc. 30-7. On June 30, 2011, the jury found Kinstle guilty on all counts. Doc. 30-8.

On July 5, 2011, Kinstle, proceeding *pro se*, filed a motion for mistrial and/or dismissal. Doc. 30-9. On July 8, 2011, Kinstle, *pro se*, filed a supplement to his motion for mistrial and/or dismissal with newspaper articles, Doc. 30-10, and a separate motion for dismissal, Doc. 30-11. On July 11, 2011, Kinstle, *pro se*, filed a motion for acquittal and included a copy of his fee agreement with his trial counsel. Doc. 30-12.

On July 15, 2011, the court entered a judgment of conviction convicting Kinstle on all twenty-three counts of intimidation. Doc. 30-13. The court continued Kinstle's sentencing

hearing and took Kinstle's request for a pre-sentence investigation report under advisement. Doc. 30-13. On July 18, 2011, the trial court sentenced Kinstle to four years each on counts 1-12 with the sentences running concurrent with one another, and four years each on counts 13-23 with the sentences running concurrent with one another but consecutive to the prison term set in counts 1-12, for an aggregate sentence of eight years. Doc. 30-14, pp. 4-5.

Also on July 18, 2011, the trial court overruled all Kinstle's post-verdict motions. Doc. 30-15.

### B.  Motion for Sanctions, Motion to Reconvene Jury

On July 18, 2011, prior to the trial court's sentencing, Kinstle, *pro se*, filed a "motion for sanctions order to seize exculpatory evidence withheld by Kenneth J. Rexford, et.al. demand for new trial." Doc. 30-27. On July 19, 2011, the trial court overruled Kinstle's motion. Doc. 30-28.

On July 20, 2011, Kinstle, *pro se*, filed a "motion to reconviene [sic] the jury for review of existence impropriety, non-impartiality." Doc. 30-29. On July 25, 2011, the trial court overruled Kinstle's motion. Doc. 30-30.

### C.  Direct Appeal

On August 8, 2011, Kinstle, *pro se*, timely filed a notice of appeal. Doc. 30-16. In his brief, Kinstle, through new counsel, presented the following assignments of error:

1. The trial court erred to the prejudice of appellant by overruling his motion to dismiss the indictment as a violation of the 14th Amendment to the United States Constitution, as well as the Article I section I of the Ohio Constitution.

2. The trial court erred to the prejudice of appellant/defendant by entering a guilty verdict that was against the manifest weight of the evidence.

3. The trial court committed an abuse of discretion by sentencing the defendant-appellant to two (2) consecutive sentence[s] of four (4) years in prison totaling eight (8) years of incarceration.

Doc. 30-18, p. 2.

On September 10, 2012, Kinstle, *pro se*, filed a motion to "take judicial notice of certain discrepancy of judicial decisions . . . regarding due process clause violations and misrepresentations" committed against him in a number of criminal and civil actions. Doc. 30-20. On October 3, 2012, the Ohio Court of Appeals found this motion to be without merit and deemed his appeal fully briefed and ready for final disposition. Doc. 30-21.

On December 17, 2012, the state Court of Appeals overruled Kinstle's assignments of error and affirmed the trial court's judgment. Doc. 30-22, p. 26.

### D. Ohio Supreme Court

On February 13, 2013, Kinstle, *pro se*, filed an untimely notice of appeal and a motion for delayed appeal in the Ohio Supreme Court. Doc. 30-23, 30-24, 30-25. On March 27, 2013, the Ohio Supreme Court denied Kinstle's motion for a delayed appeal and dismissed his case. Doc. 30-26.

### E. Petition to Vacate or Set Aside Judgment of Conviction or Sentence

On June 4, 2012, while his direct appeal was pending in the Ohio Court of Appeals, Kinstle, *pro se*, filed a "petition to vacate or set aside judgment of conviction or sentence" in the trial court raising the following twenty-three claims for relief:

1. Statement of constitutional claim: Sixth Amendment, U.S.A. Constitution; Section 10, Article 1, Ohio Constitution, right to be informed of nature and cause.

2. Statement of Constitutional Claim: Fourteenth and Fifth Amendment of the United States of America Constitution and Section Sixteen, Article I of the Ohio Constitution. Due process clause violation. Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211.

3. Statement of Constitutional Claim: Sixth Amendment, U.S.A. Constitution; Section 10, Article 1, Ohio Constitution right to confrontation of adverse witnesses, on direct and cross examination.

8

4. Statement of Constitutional Claim; Fifth and Fourteenth Amendments of the United States of America Constitution; Section 10, Article I, Ohio Constitution, right to due process and a fair trial.

5. Statement of Constitutional Claim: The court did go contrary to the separation of powers clause of the U.S.A. Constitution, which clearly separates the power of the legislative, judicial, and executive branches of gov't. The Ohio Constitution specifically lays out power in Article II, III, IV, as to vested power. See, generally, Ohio Constitution.

6. Statement of Constitutional Claim: Fifth and Fourteenth Amendment of the United States of America Constitution; Section 10. 10a., 16, Article I of the Ohio Constitution.

7. Statement of Constitutional Claim: Sixth Amendment U.S.A. Constitution; Section 10, Article I, Ohio Constitution. Also the Eighth Amendment of U.S.A. Constitution; Section 10, Article I, Ohio Constitution. Also the Eighth Amendment of U.S.A. Const.

8. Statement of Constitutional Claim: Sixth, First, Fifth Amendment U.S.A., & Sect. 10, 16 Ohio Constitution.

9. Statement of Constitutional Claim: Fifth, Sixth, Ninth, Eleventh Amendments of the U.S.A. Constitution, as well as Section 2, Article IV; Section 10, 16, Article I Ohio Constitution.

10. Statement of Constitutional Claim: Fifth, Sixth, Ninth, Eleventh Amendments and Section 2 Article IV of the U.S.A. Constitutional; Section 10, 16 Article I, Ohio Constitution.

11. Statement of Constitutional Claim: 6th, 9th 5th, 11th Amendments of U.S.A. Constitution. Section 10, 16, Art. 1, Ohio Constitution.

12. Statement of Constitutional Claim: First, Fourth, Fifth, Sixth, Eighth, Ninth, Eleventh, Fourteenth Amendment, U.S.A. Constitution; Section 10, 16 Article I, Ohio Constitution.

13. Statement of Constitutional Claim: First, Fifth, Sixth, Fourteenth, Amendments, U.S.A. Constitution, Section 10, 16, Article I, Ohio Constitution.

14. Statement of Constitutional Claim: First, Fifth, Sixth, Fourteenth Amendments of U.S.A. Constitution; Section 10, 16, Art. I, Ohio Constitution.

15. Statement of Constitutional Claim: First, Sixth Amendment of U.S.A. Constitution; Sect. 10, 16, Art. I Ohio Constitution.

16. Statement of Constitutional Claims: First, Fifth and Sixth Amendment, U.S.A. Constitution; Section 10, Article One, Ohio Constitution.

17. Statement of Constitutional Claim: Fifth Amendment.

18. Statement of Constitutional Claim: Fifth Amendment of U.S.A. Constitution Sect. 10, 16, Art. I Ohio Constitution.

19. Statement of Constitutional Claim: Sixth, Fourteenth Amendment of U.S.A. Constitution,  Sect. 10, Art. I, Ohio Constitution.

20. Statement of Constitutional Claim: Fifth, Eighth Amendment U.S.A. Constitution, Sect. 10, Art. I Ohio Constitution.

21. Statement of Constitutional Claim: Fifth, Sixth, 14th Amendment U.S.A. Constitution, Sect. 10, Art. I Ohio Constitution.

22. Statement of Constitutional Claim: Fifth and Sixth Amendment U.S.A. Constitution, Section 10 Art. I, Ohio Constitution.

23. Statement of Constitutional Claim: 5th, 6th, 14th Amendment, U.S.A. Constitution, Sect. 10, Art. I Ohio Constitution.

Doc. 30-31, pp. 1-72.[5]  On June 14, 2012, Kinstle, *pro se*, filed a motion for leave to file his post-conviction petition. Doc. 30-32.

On June 28, 2012, the trial court denied Kinstle leave to file his petition for post-conviction relief and the petition for post-conviction relief. Doc. 30-33. The court did not issue findings of fact and conclusions of law. Doc. 30-33.

On July 23, 2012, Kinstle, *pro se*, timely filed a notice of appeal from the denial of leave to file post-conviction relief and denial of post-conviction relief. Doc. 30-34; 30-35. In his brief, Kinstle raised the following sole assignment of error:

> The Trial Court erred to the prejudice of appellant by overruling the "Petition To Vacate Or Set Aside Judgment Of Conviction Or Sentence" as a violation of the 14th Amendment, united States of America Constitution, as well as Article I, Section 1 of the Ohio Constitution.

Doc. 30-36, p. 2. On March 11, 2013, the Ohio Court of Appeals dismissed Kinstle's appeal, stating that the judgment he appealed—the trial court's June 28, 2012, decision denying post-

---

[5]  Kinstle provided numerous pages describing the facts supporting each claim for relief. *See, generally*, Doc. 30-31, pp. 1-74.

conviction relief—was not a final appealable order because it lacked findings of fact and conclusions of law. Doc. 30-35, p. 5.

Meanwhile, on July 12, 2012, Kinstle filed a demand for findings of fact and conclusions of law in the trial court, which the trial court denied on July 26, 2012. Doc. 30-40; 30-3, p. 7. Kinstle did not appeal this ruling. Instead, on July 30, 2012, Kinstle filed a Motion for Leave for Reconsideration of his post-conviction petition to vacate or set aside judgment, adding an additional four claims for relief to the twenty-three claims contained in the earlier post-conviction petition. Doc. 30-41. Kinstle's four additional claims are as follows:

> Claim 24. Statement of Constitutional Claim: Sixth Amendment u.S.A. Constitution; Section 10, Article I, Ohio Constitution.

> Claim 25. Statement of Constitutional Claim: Fifth Amendment of united States of America; Section 10, Art. I, Ohio Constitution.

> Claim 26. Statement of Constitutional Claim: Fifth, Sixth and Fourteenth Amendment of the united States of America Constitution; Section 10 & 16 Art. I, Ohio.

> Claim 27. Statement of Constitutional Claim: Fifth, Sixth and Fourteenth Amendment; Sect. 10, Art. I Ohio Constitution.

Doc. 30-41, pp. 77, 80, 83, 86.

Thereafter, on November 16, 2012, Kinstle, *pro se*, filed a Motion for Leave to File an Amended Petition for Post-conviction Relief and a Motion to Supplement the Amended Petition for Post-conviction relief with an additional four claims. Doc. 30-42, 30-43. Kinstle presented the following four additional claims:

> Claim 28. Statement of Constitutional Claim: 1st Amendment right to redress grievances in Courts, 6th Amendment right to obtain witnesses in his favor, and a defense, 14th Amendment Right that "no state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Also, Section 1, 3, 16, Ohio Constitution, Article I.

11

Claim 29. Statement of Constitutional Claim: 5th, Due Process, 6th nature and cause, 14th Equal Protection of Law, entered in the Amendments of the U.S.A. Constitution, and Sect. 1, 3, 16, 20, as well 10, Art. I, Ohio Constitution.

Claim 30. Statement of Constitutional Claim: 1st Amendment Right of Redress, 5th Amendment Right to due process of law, 6th Amendment Right to demand Nature and Cause of Action, 14th Amendment Right to Equal Protection of Law. and Article I, Section 1, 3, 16, 20, 10 Ohio Constitution.

Claim 31. Statement of Constitutional Claim: 1st, 5th, 6th, 14th, 8th Amendments of united States of America Constitution and Section 1st 3rd of Article I, Ohio Constitution and Sect. 19 and Art. IX.

Doc. 30-43, pp. 2, 5, 8, 11.  On December 27, 2012, the trial court overruled Kinstle's motions.

Doc. 30-3, 30-44.  Kinstle did not appeal the trial court's rulings.

### F.  State Habeas Petition

On December 3, 2012, Kinstle, *pro se*, filed a petition for writ of habeas corpus in the

Ohio Supreme Court.  Doc. 30-59; 30-60.  Kinstle presented two issues for review:

1. Whether R.C. 2921.03 violates Petitioner's u.S.A. and Ohio Constitutional Rights when it acts to restrict an individual[']s ability to redress grievances

2. Whether a Guilty Verdict for violation of R.C. 2921.03 is against the weight of the evidence, where no victim was dissuaded from his/her duty, and evidence fails to support a purpose of defendant to intimidate or hinder, when the duty they allege to be held, is not one lawful pursuant to law (to Sell or Convey Petitioner's 3320 Swaney Road, Allen County, Ohio property, unlawfully seized by Sheriff, by a void Order absent Jurisdictional Authority to be entered as a Foreclosure Order, and a previous Foreclosure Order that is not a Final Appealable Order.

Doc. 30-60, p. 2.

On December 31, 2012, Kinstle filed a notice with the Ohio Supreme Court requesting

"the cooperation and participation in the decision to release and or disclose Grand Jury

Transcripts in Allen Cty Common Pleas Court . . ."  Doc. 30-61, p. 1.  On January 23, 2013, the

Ohio Supreme Court dismissed Kinstle's petition.  Doc. 30-62.

### G.  Motion to Suspend Further Execution of Sentence and Motion for New Trial

On February 7, 2013, Kinstle, *pro se*, filed a motion in the trial court to suspend further execution of his sentence based on "…newly discovered evidence produced by the [] court of Judge Richard K. Warren…" regarding the Swaney Road property.  Doc. 30-46.  On March 12, 2013, the trial court overruled Kinstle's motion.  Doc. 30-47.

On March 28, 2013, Kinstle, *pro se*, filed a notice of appeal.  Doc. 30-48.  On April 10, 2013, the Ohio Court of Appeals applied R.C. § 2323.52(F)(2), under which Kinstle had been declared a vexatious litigator, and dismissed his action, finding that further proceedings would be an abuse of process and that there were no reasonable grounds for an appeal.  Doc. 30-49, p. 2.

On May 10, 2013, Kinstle, *pro se*, filed a petition for writ of mandamus in the Ohio Supreme Court seeking to force the state Court of Appeals to permit him to appeal the March 12, 2013, trial court judgment denying his motion to suspend further execution of the sentence.  Doc. 30-51.  On May 28, 2013, the Allen County Prosecutor moved to dismiss Kinstle's mandamus petition, and on June 6, 2013, the Third District Court of Appeals also moved for dismissal of the mandamus petition.  Doc. 30-52; 30-53.  On July 24, 2013, the Ohio Supreme Court granted both motions to dismiss.  Doc. 30-54.

### H. Rule 26(B) Application to Reopen

On May 15, 2015, Kinstle filed an Application for Reopening pursuant to App. R. 26(B) with the Ohio Court of Appeals.  Doc. 75-3.[6]  On May 27, 2015, the state Court of Appeals denied his application as untimely.  Doc. 67-1.

### I. Amended Federal Habeas Petition

---

[6]  Kinstle attached a document purporting to be his Rule 26(B) Application to his Amended Petition.  Doc. 75-3.  A review of the Allen County Court of Appeals' docket in Kinstle's case (Case No. 01-11-045) indicates that he filed a Rule 26(B) Application on May 15, 2015.  The state did not include Kinstle's recent Rule 26(B) Application in its state court record, instead relying on the previously filed state court record generated prior to Kinstle's 26(B) Application.  The undersigned assumes that the document attached to Kinstle's Amended Petition, Doc. 75-3, is a copy of the Rule 26(B) Application he filed with the Allen County Court of Appeals on May 15, 2015.

On November 20, 2015, Kinstle, *pro se*, filed an Amended Petition for a writ of habeas corpus. Doc. 75.  He lists the following grounds for relief:[7]

**Ground One:** Whether R.C. 2921.03 violates Petitioners U.S.A and Ohio Constitutional Rights when it acts to restrict an individual[']s ability to redress grievances.

**Ground Two**: Whether a Guilty Verdict for violation of R.C. 2921.03 is against the weight of the evidence, where no victim was dissuaded from his/her duty, and evidence fails to support a purpose of defendant to intimidate or hinder, when the duty they allege to be held is not one lawful pursuant to law (to Sell or Convey Petitioner's 3320 Swaney Road, Allen County, Ohio property, unlawfully seized by Sheriff, by a void Order absent Jurisdictional Authority to be entered as a Forfeiture Order, and a previous Foreclosure Order that is not a Final Appealable Order, to cause enforcement of lien.

**Ground Twelve**: Statement of Constitutional Claim: 8th, 6th, 14th Amendments to the U.S.A. Constitution;  Article I, Section 10, 16, Ohio Constitution...

**Ground Fourteen**: Statement of Constitutional Claim: 5th Amendment to the U.S.A. Constitution;  Sect. 10, Article 1, Ohio Constitution was violated by failure of trial Court to allow review by Defendant and Defense Counsel, to check for errors on or in the PSI Report.

Doc. 75, pp. 15-28.[8]

On February 19, 2016, Respondent filed a Return of Writ, arguing that all Kinstle's grounds for relief are procedurally defaulted and fail on the merits.  Doc, 82, pp, 17-36.  Kinstle did not file a Traverse.

### III. Legal Standard

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Kinstle's habeas petition because he filed it after the effective date of the AEDPA. 28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 20 07).  Under the AEDPA, a petitioner must meet certain procedural requirements in order

---

[7]  For consistency, the undersigned retains the original numbering of the grounds for relief as Kinstle first presented them in his Petition.

[8]  Kinstle also requested additional relief in his Amended Petition (Doc. 75, pp. 46-57), which the undersigned does not consider.  *See* Doc. 74 (District Court Order explaining that Kinstle, in his Amended Petition, includes arguments other than the four grounds for relief he was permitted to proceed upon and that any extraneous arguments or documents offered shall be disregarded).

to have his claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States,* 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id. at 806* (quoting *Engle v. Isaac,* 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies. *Williams, 460 F.3d at 806.*

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues

arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.** Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*. In *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848).  "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state

courts constitutes a procedural default of those claims that bars federal court review. *Williams,* *460 F.3d at 806.*

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman,* 501 U.S. at 750.

## IV. Analysis

Kinstle's four grounds for relief are procedurally defaulted. Specifically, as explained more fully below, Kinstle failed to present Grounds Twelve and Fourteen to the Ohio Court of Appeals on direct appeal and failed to present all his grounds—Grounds One, Two, Twelve and Fourteen—to the Ohio Supreme Court.[9]

### A. Kinstle failed to raise Grounds Twelve and Fourteen on direct appeal

In Ground Twelve, Kinstle complains that the court reporter in the state trial court failed to transcribe and deliver all the state court proceedings to Kinstle. Doc. 75, p. 26. This claim is based on the trial court record and, therefore, should have been raised on direct appeal. *Buell v.* *Mitchell,* 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal," citing *State v. Lentz,* 639 N.E.2d 784, 785 (1994)); *Plaza v. Bock,* 120 Fed. App'x 587, 591 (6th Cir. 2005) (a petitioner's claim that he was denied trial transcripts is known to the petitioner at the time of his direct appeal; failure to raise the issue as a claim on direct appeal results in procedural default). Kinstle can no longer raise this issue because he is barred by *res judicata. Buell,* 274 F.3d at 349. Thus, Kinstle has procedurally defaulted this claim. *See Williams,* 460 F.3d at 806 (a claim is procedurally defaulted when a petitioner failed to raise it in state court and pursue it

---

[9] Respondent asserts that Kinstle also failed to present Ground One to the Court of Appeals on direct appeal. Doc. 82, p. 18. This is incorrect; Kinstle presented Ground One to the Ohio Court of Appeals on direct appeal. *See* Doc. 30-18, pp. 6-13 (arguing that R.C. § 2921.03 is unconstitutional and violated Kinstle's due process rights).

through the state's ordinary appellate review procedures and state law no longer permits the petitioner to raise the claim); *O'Sullivan*, 526 U.S. at 848.

In Ground Fourteen, Kinstle argues that the trial court improperly failed to disclose his presentence ("PSI") report to him or his attorney prior to sentencing; failed to allow him or the state to comment on the PSI report; and failed to provide a competent doctor to conduct a mental evaluation of him. Doc. 75, p. 28. Kinstle did not present these claims to the Ohio Court of Appeals on direct appeal as he should have done; thus, Kinstle procedurally defaulted Ground Fourteen for the same reason he procedurally defaulted Ground Twelve.[10]

For cause to excuse his procedural default, Kinstle asserts that his appellate counsel was ineffective for failing to raise these issues on direct appeal. Doc. 75, pp. 26-28. In order for ineffective assistance of appellate counsel to serve as cause to excuse a procedural default, a petitioner must have presented the ineffective assistance of counsel claim to the state courts without procedurally defaulting the claim. *Buell*, 274 F.3d at 349. Although Kinstle did file a Rule 26(B) Application raising ineffective assistance of appellate counsel (Doc. 75-3), the Ohio Court of Appeals rejected his 26(B) Application as time-barred. Doc. 67-1. Thus, Kinstle procedurally defaulted his ineffective assistance of appellate counsel claim. *See Monzo v. Edwards*, 281 F.3d 568, 577-578 (6th Cir. 2002) (state court enforcement of the time limit for filing a Rule 26(B) Application is an adequate and independent state procedural rule sufficient to foreclose federal habeas review). He does not allege cause to excuse his procedural default of this claim. Accordingly, ineffective assistance of appellate counsel cannot serve as cause to excuse his procedural default of Grounds Twelve and Fourteen.

---

[10] The undersigned notes that Kinstle raised Grounds Twelve and Fourteen in his Motion for Leave for Reconsideration of Petition to Vacate or Set Aside Judgment of Conviction. Doc. 30-41 (Motion for Leave of Reconsideration), pp 1-7 (Ground Twelve), p. 80 (Ground Fourteen). The trial court overruled his motion and he did not appeal that decision. Docs. 30-3; 30-44.

Furthermore, Kinstle does not explain how he was prejudiced by the court reporter's alleged failure to provide him with transcripts of his initial appearance, arraignment, and side-bar conversations during trial.  He only states that these materials would have "demonstrate[d] whether or not Jurisdiction and Cause was ever established by the Trial Court" (Doc. 75, p. 26) but provides no reasonable explanation why he believes the trial court did not have jurisdiction over him or how, for example, a side-bar conversation at trial would have revealed facts pertaining to the trial court's jurisdiction over him; in short, he does not show a "reasonable probability that the result of the trial would have been different[.]" *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (internal quotation marks omitted).

Finally, Kinstle does not show manifest injustice, i.e., that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (6th Cir. 1995).  Nowhere in his Petition or Traverse does Kinstle provide new, reliable evidence that he is actually innocent.

Grounds Twelve and Fourteen are procedurally defaulted because Kinstle never raised these issues on direct appeal and he cannot show cause, prejudice, or manifest injustice to excuse his procedural default.

**B. Kinstle failed to present Grounds One, Two, Twelve and Fourteen to the Ohio Supreme Court**

Kinstle failed to present all his grounds for relief—Grounds One, Two, Twelve and Fourteen—to the Ohio Supreme Court. Thus, he procedurally defaulted Grounds One and Two, and his failure to present Grounds Twelve and Fourteen to the Ohio Supreme Court are an additional reason why these latter grounds are procedurally defaulted.[11]

In Ground One, Kinstle argues that R.C. § 2921.03 violates his constitutional rights because it restricts his ability to redress grievances and is overbroad and vague. Doc. 75, p. 15. In Ground Two, Kinstle asserts that his conviction under R.C. § 2921.03 was against the manifest weight of the evidence. Doc. 75, p. 20. Kinstle raised these claims in his direct appeal to the Ohio Court of Appeals, Doc. 30-18, p. 6, 9-10, 13, but did not timely appeal the Ohio Court of Appeals' decision to the Ohio Supreme Court. Instead, Kinstle filed a Motion for Delayed Appeal, which the Ohio Supreme Court denied. Doc. 30-26. When the Ohio Supreme Court denied his motion, it was based on an adequate and independent state ground that foreclosed federal habeas review. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (a petitioner must present claims to the state courts in accordance with the state's procedural rule; the Ohio Supreme Court's denial of a leave to file a delayed appeal constitutes a procedural ruling foreclosing federal habeas review).

For cause to excuse his procedural default, Kinstle states that he was unable to timely appeal to the Ohio Supreme Court because he was unable to comply with a court rule—that a copy of the decision appealed be attached in its original size, not in reduced form—because his appellate counsel only provided him with a copy of the Ohio Court of Appeals' decision that was reduced in size and the prison would not produce enlarged copies for him in time. Doc. 75, p.

---

[11] In a portion of Ground Twelve, Kinstle complains that the Ohio Court of Appeals denied him his right to self-representation. Doc. 75, p. 27. As explained below, he did not present this claim to the Ohio Supreme Court. Moreover, it appears as though Kinstle actually attempted hybrid representation on direct appeal. *See* Docs. 30-16, 18, 20, 21. The Ohio Court of Appeals' refusal to allow hybrid representation is not grounds for federal habeas relief. *See Rojas v. Warden*, 2015 WL 631183, at ** 38-40 (N.D.Ohio Feb. 12, 2015) (there is no constitutional right to hybrid representation on appeal).

30.  Even so, the Ohio Supreme Court explained, in its letter to Kinstle, that it also rejected Kinstle's brief in support of jurisdiction because he failed to comply with the 15-page limit set forth in the Supreme Court of Ohio Rule of Practice 7.02(B) and that he included impermissible attachments.  Doc. 30-25, p. 3.  Thus, even if the size of the copies could constitute cause, there are other reasons described by the Ohio Supreme Court as to why it rejected his documents and Kinstle does not explain how he was prevented from complying with these procedural rules.

As above, Kinstle fails to allege prejudice (the outcome would have been different), or manifest injustice (new evidence showing actual innocence).  Accordingly, he has procedurally defaulted all his grounds for relief because he failed to present them to the Ohio Supreme Court.  *See Bonilla,* 370 F.3d at 497.

## V. **Conclusion and Recommendation**

For the reasons stated above, the undersigned recommends that Kinstle's Amended Petition (Doc. 75) be **DISMISSED** because all his grounds asserted therein are procedurally defaulted.

Dated: April 22, 2016

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied,* 474 U.S. 1111 (1986).